### KASTEL v. FISH, Superintendent of Federal Prison Camp No. 3, Odenton, Md.

### No. 4476.

District Court, D. Maryland.

Jan. 10, 1931.

James A. McDonnell, of Washington, D. C., for petitioner.

William Carswell Baxter, Asst. U. S. Atty., of Baltimore, Md., for respondent.

SOPER, District Judge.

The question involved in the petition for writ of habeas corpus is whether the term of the sentence of the petitioner under which he is now held in Federal Prison Camp No. 3 expired on January 2, 1931. Having been originally confined in the Atlanta Penitentiary under sentence of the District Court of the United States for the Southern District of New York for the term of three years, beginning November 12, 1928, he was transferred to the Prison Camp on May 25, 1930. The Acts of Congress to be interpreted are 18 U.S.C.A. § 710, the Act of February 26, 1929, 45 Stat. 1318, 18 U.S.C.A. §§ 851–855, and the Act of May 27, 1930, 46 Stat. 391, 18 U.S.C.A. §§ 744a–744h, wherein provision is made for various deductions from sentences imposed in case of good behavior on the part of the sentenced prisoners. One question which needs to be decided is whether the Act of May 27, 1930, superseded the Act of February 26, 1929. It is suggested by counsel for the prisoner that the Act of February 26, 1929, took effect as of its date of approval, and that any one who was transferred from the Penitentiary to the Camp while that Act was in effect acquired in a sense a vested right in the deductions of five days per month which the Act provided, and that as to said person the reduced allowance provided for at the discretion of the Attorney General by the Act of May 27, 1930, could not apply. The opinion of the Court on that point is that the Act of May 27, 1930, did repeal the Act of February 26, 1929, and was effective from its date, not only as to persons who were brought to the Camp after its date, but as to persons who were brought to the Camp before its date. In other words, after May 27, 1930, the allowances were cut from five days to three days a month for the first year. I do not know of any rule of law which would give the prisoner a vested right in the larger allowance. If Congress had the right to pass the Act of February 26, 1929, authorizing the transfers, and giving the allowance, which right is not disputed by counsel for the prisoner, it seems to the Court that Congress also had the right to amend that Act.

The second point that calls for decision is perhaps a little difficult to state. It relates to the manner in which the allowance for good behaviour should be computed under either Act. Taking the Act of May 27, 1930, as the one now in effect, we find this provision: § 8, 18 U.S.C.A. § 744h states in substance that the prior Acts of Congress now found in §§ 710 to 712a, inclusive, of Title 18, United States Code Annotated "providing for commutation of sentences of United States prisoners for good conduct, shall be applicable to prisoners engaged in any industry, or transferred to any camp established under authority · of [sections 744b and 744c] this Act [title]; and in addition thereto each prisoner, without regard to length of sentence, may, in the discretion of the Attorney General, be allowed, under the same terms and conditions as provided in [sections 710 to 712a, inclusive,] the Acts of Congress referred to in this Section, a deduction from his sentence of not to exceed three days for each month of actual employment in said industry or said· camp". The contention of the petitioning prisoner is, or may be illustrated by taking the figures applicable to his own case. He was sentenced on November 12, 1928, to three years in the Penitentiary at Atlanta. When he entered the prison it was computed in accordance with the practice that under § 710 of Title 18 of the Code, he was entitled to seven days a month if his record of conduct would show that he had faithfully observed all the rules, amounting to an aggregate of two hundred and fifty-two days. Consequently, if his conduct should prove to be good, he would be entitled to be

released on March 4, 1931. He was transferred to the prison camp on May 25, 1930. At that time there remained of his original sentence, which would have expired, except for the allowance of good behaviour, on November 12, 1931, approximately seventeen months. The petitioner contends that he should be allowed, under the Act of May 27, 1930, three days a month for the first twelve months and five days a month for the additional five months, or sixty-one days in all, so that under this construction he would have been entitled to his release at midnight of January 2, 1931. The substantial basis for the argument is that the calculation for good behaviour under the Act of May 27, 1930, should be made in exactly the same way as it was made before the amendatory Acts under the provisions of § 710 of Title 18 U.S.C.A. The practice under the last-mentioned Act at the Penitentiary, as illusrated by the above figures, was to put down the total time as set out in the sentence of the court, and then to figure the deduction in accordance with the provisions of § 710 as so many days per month, counting the number of months in the sentence, and having in this way determined the entire good behaviour allowance, the deduction of it from the sentence of the court was then made. This was undoubtedly in accordance with the Act, and it was a convenient thing to set it down on the records at the beginning of the term, so that the prisoner might know what allowance was to be made him, provided his behaviour was good.

Now, it is contended that the same thing should be done with that part of the original term of the sentence which would remain subsequent to the date of the transfer of the prisoner from the Penitentiary to the Camp. This contention does not seem to the court to be supported by the language of the subsequent amendatory Acts. Taking that of May 27, 1930, which has been set out above, it will be noticed that it is specifically provided that the deduction from the sentence is to be made "for each month of actual employment in said industry or said camp." The deduction for which the prisoner contends would not be estimated as so many days per month for each month of actual employment in the camp or industry, but would be estimated at so many days per month for the interval commencing at the date of his transfer to the camp and ending with the date of expiration of the sentence as pronounced by the court. These two methods of calculation are obviously quite different, and that contended for by the prisoner seems to this court to be contrary to the meaning of the terms of the Act of May 27, 1930, because the deduction would not have any relation to the months of actual employment of the prisoner in the camp.

Referring again by way of contrast to § 710 of 18 U.S.C.A., it will be observed that its language does not include any reference to actual employment or time spent in the Penitentiary. On the contrary, that section provides substantially that each prisoner convicted of an offense against the United States and confined in execution of sentence in any United States Penitentiary for a definite term, whose record of conduct shows that he has faithfully observed the rules of the institution, shall be entitled to a deduction from the term as sentenced to be estimated as follows: "Commencing on the first day of his arrival at the penitentiary, prison, or jail: Upon a sentence of no less than six months nor more than one year, five days for each month", and so forth. From this language it is plain that the basis of the deduction for good time allowance is the length of the sentence pronounced by the court, and not the time of actual employment or stay in the penitentiary by the prisoner.

The prisoner, in the opinion of the court, is still lawfully held in the prison camp, and his sentence will not have expired under any circumstances before February 4, 1931. This figure is reached in the following manner: The prisoner is first allowed two hundred and fifty-two days under § 710 of 18 U.S.C.A., which is reached by allowing a deduction of seven days a month on the sentence of three years, or thirty-six months. The prisoner was transferred to Federal Prison Camp No. 3 on May 25, 1930. From that day forward he was entitled, in the opinion of the court, to three days for each month of actual employment in the camp, in the discretion of the Attorney General. Should this discretion be exercised favorably to the prisoner, he will have earned an additional amount of twenty-four days on January 25, 1931. Making this deduction, his term would expire on February 8, 1931. The Government concedes, however, that the prisoner should be released on February 4, 1931, by reason of a ruling of the Department of Justice, promulgated on July 30, 1930, which declared that prisoners transferred to the camps prior to August 1, 1930 should be allowed for June and July, not three days a month, as provided in the Act

of May 27, 1930, but five days a month, the allowance previously in effect under the Act of February 26, 1929. It appears that ·the prisoners transferred prior to July 30, 1930, were not advised of the reduced deduction provided by the later Act, and it was the opinion of the Department that good faith with these men required that the provisions of the later Act should not be put into effect prior to August 1, 1930. The effect of this ruling is to give to the prisoner in the case at bar five days a month for the first two months of his stay at the prison camp instead of three days a month.

For these reasons, the petition for writ of habeas corpus must be denied.