[No. A027744. First Dist., Div. Five. Dec. 27, 1985.]

In re MAURICE LeDAY on Habeas Corpus.

## COUNSEL

Michael Satris, under appointment by the Court of Appeal, for Petitioner.

John K. Van de Kamp, Attorney General, Thomas P. Dove, Paul D. Gifford and John C. Herbert, Deputy Attorneys General, for Respondent.

## OPINION

**HANING,** Petitioner Maurice LeDay seeks a writ of habeas corpus, contending that the extension of his recommitment to prison as a parole violator pursuant to Penal Code section 3057, subdivision (c), was an invalid ex post facto punishment.

Until January 1, 1984, subdivision (a) of section 3057 provided without additional qualification that "[c]onfinement pursuant to a revocation of parole in the absence of a new conviction and commitment to prison under other provisions of law, shall not exceed twelve months." Effective on that date subdivision (c) was added to section 3057, and subdivision (a) was amended to add the words "except as provided in subdivision (c)." (Stats.

1983, ch. 757, § 2.) Subdivision (c) provides, in pertinent part: "Notwithstanding the limitation of subdivision (a) upon confinement pursuant to a parole revocation, the board may extend the confinement pursuant to parole revocation for a maximum of an additional 12 months for subsequent acts of misconduct committed by the parolee while confined pursuant to that parole revocation."

Maurice LeDay was sentenced to prison in October 1981, released on parole in April 1983, and recommitted to prison in July 1983 for parole violation with a release date of June 17, 1984. In April 1984 LeDay's release date was postponed to August 1984 upon a finding that he had committed an act of misconduct in February 1984. He filed a petition for habeas corpus in the Supreme Court, contending that as applied to him subdivision (c) is an unconstitutional ex post facto law. The Supreme Court issued an order to show cause returnable here. LeDay was released from prison in July, while this petition was pending. Because we regarded the ex post facto issue as one of broad public interest that is likely to recur in other contexts, we proceeded to the merits notwithstanding the apparent mootness of LeDay's application. (*In re. William M.* (1970) 3 Cal.3d 16, 23-25 [89 Cal.Rptr. 33, 473 P.2d 737].)

We concluded that as applied to a parolee whose initial imprisonment was based on a crime committed before the effective date of subdivision (c) of Penal Code section 3057 (which authorizes extensions of parole violators' recommitment terms for new misconduct), subdivision (c) was an unconstitutional ex post facto provision. Following our decision the Supreme Court granted a hearing and remanded the matter to us for reconsideration in light of *In re Ramirez* (1985) 39 Cal.3d 931 [218 Cal.Rptr. 324, 705 P.2d 897].

■ "The *ex post facto* prohibition forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.' [Citations.] Through this prohibition, the Framers sought to assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed. [Citations.] The ban also restricts governmental power by restraining arbitrary and potentially vindictive legislation. [Citations.] [¶] In accord with these purposes, our decisions prescribe that two critical elements must be present for a criminal or penal law to be *ex post facto:* it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it. [Citations.]" (*Weaver* v. *Graham* (1981) 450 U.S. 24, 28-29 [67 L.Ed.2d 17, 22-23, 101 S.Ct. 960], fns. omitted.)

■ LeDay asserts that both elements are present here.

Unquestionably the new provisions embodied in subdivision (c), permitting extension of a parolee's recommitment term for misconduct committed during that term, *disadvantaged* LeDay in the requisite sense.

The closer question is whether, as applied to LeDay, subdivision (c) was retrospective. The misconduct for which LeDay's term was extended occurred *after* the effective date of the new subdivision. The People argue that the fair-warning purpose of the ex post facto clauses was served in LeDay's case: "Petitioner had fair notice as of [January 1, 1984] that *future* acts of misconduct could result in an extension of his terms of confinement for his parole violations. . . . [P]etitioner, not the Legislature or the Board, was the master of his own destiny." LeDay argues that the relevant inquiry is whether (in the words of the U.S. Supreme Court) "the provision attaches legal consequences to a crime committed before the law took effect" (*Weaver* v. *Graham, supra,* 450 U.S. at p. 31 [67 L.Ed.2d at p. 24]) and that for this purpose the "crime" is not his new misconduct but rather the crime for which he was initially committed to prison, long *before* January 1, 1984.

In *In re Ramirez, supra,* 39 Cal.3d at page 932, our Supreme Court determined that "a new statutory plan[1] for awarding sentence reduction credits [could] be applied, without violation of the ex post facto clauses of the California [art. I, § 9] or federal [art. I, § 10] Constitutions . . . ." The petitioner in *Ramirez* was incarcerated for a crime committed prior to January 1, 1983, at which time the new statutory plan for sentence reduction credits became effective. Due to misconduct occurring in January 1983, Ramirez lost more behavior credits than he would have under the law as it existed prior to January 1, 1983.[2]

In analyzing *Weaver* v. *Graham, supra,* 450 U.S. 24 [67 L.Ed.2d 17], our Supreme Court in *Ramirez* reasoned that the changes in the law regarding sentence reduction credits did not operate retrospectively to constitute an ex post facto violation because they did not increase the punishment, but "simply change[d] one aspect of petitioner's life in prison" (*In re Ramirez, supra,* 39 Cal.3d at p. 937), and because the increased sanctions were imposed only for conduct occurring after the law changed.

We perceive no practical or legal distinction between the circumstances in *Ramirez* and those of the present case. Both inmates were imprisoned for

---

[1]See Statutes 1982, chapter 1234, amending Penal Code sections 2930, 2931, 2932 and 4019, and adding sections 2933, 2934 and 2935.

[2]Under the new law prisoners could elect to be governed by either system. A prisoner who elected the old system would still be governed by certain provisions of the new law, including an increase in the maximum credit subject to forfeiture for acts of misconduct. Ramirez elected to be governed by the old law, but suffered a deprivation of more credit than would previously have been allowed.

crimes occurring prior to the statutory change requiring additional custodial time for conduct occurring subsequent to the initial incarceration. Both inmates engaged in improper conduct after the change in the law. Both were on notice that future misbehavior could result in additional custodial time.

Based upon *Ramirez* the petition herein is denied.

Low, P. J., and King, J., concurred.

Petitioner's application for review by the Supreme Court was denied March 13, 1986.