[No. A026987. First Dist., Div. One. May 16, 1986.]

In re LARRY NOLASCO et al., on Habeas Corpus.

**COUNSEL**

John K. Van de Kamp, Attorney General, Kenneth C. Young, Paul D. Gifford, Morris Lenk and Elizabeth Edwards, Deputy Attorneys General, for Appellant.

Michael Satris, under appointment by the Court of Appeal, for Respondents.

OPINION

**NEWSOM, J.**—The People have appealed from judgments granting respondents' petitions for writs of habeas corpus directing the release of respondents from prison on the ground that the extension of their parole revocation release dates pursuant to subdivision (c) of Penal Code section 3057[1] (hereafter subdivision (c)), amounted to unconstitutional ex post facto punishment. (U.S. Const., art. I, § 10; Cal. Const., art. I, § 9.) The People also seek reversal of the trial court's order enjoining application of section 3057, subdivision (c) to any similarly situated prisoners—i.e., prisoners whose commitment offenses occurred before the effective date of the statute, January 1, 1984.

In accordance with subdivision (a) of section 3057, "[c]onfinement pursuant to a revocation of parole in the absence of a new conviction and commitment to prison . . ." cannot exceed 12 months. Until subdivision (c) was added to section 3057, a parolee serving a revocation term imposed for a parole violation was not subject to additional penalties for acts of misconduct committed in prison. Effective on January 1, 1984, subdivision (c) provides, in pertinent part: "Notwithstanding the limitation of subdivision (a) . . . upon confinement pursuant to a parole revocation, the board may extend the confinement pursuant to parole revocation for a maximum of an additional 12 months for subsequent acts of misconduct committed by the parolee while confined pursuant to that parole revocation."

Respondents committed offenses before the effective date of subdivision (c). Then the parole of each respondent was revoked, leading to imposition of additional terms in custody pursuant to section 3057, subdivision (a). While in custody after January 1, 1984, respondents were found to have committed acts of misconduct, and under authority of subdivision (c) each respondent had his parole revocation date extended.

The Attorney General argues on behalf of appellant that application of subdivision (c) to extend respondents' parole revocation terms does not violate the proscription against ex post facto laws. The essence of the Attorney General's argument is that subdivision (c) was "used to extend respondents' parole revocation terms for acts which occurred *after* the effective date and fair notice of the amendment to the statute." (Italics added.) We agree.

"The *ex post facto* prohibition forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not

---

[1]All further statutory references will be to the Penal Code unless otherwise indicated.

punishable at the time it was committed; or imposes additional punishment to that then prescribed.' [Citations.] Through this prohibition, the Framers sought to assure that legislative Acts give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed. [Citations.] The ban also restricts governmental power by restraining arbitrary and potentially vindictive legislation. [Citations.] [¶] ■ In accord with these purposes, our decisions prescribe that two critical elements must be present for a criminal or penal law to be *ex post facto*: it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it. [Citations.]" (*Weaver* v. *Graham* (1980) 450 U.S. 24, 28-29, fns. omitted [67 L.Ed.2d 17, 22-23, 101 S.Ct. 960].)

■ Turning first to the issue of whether section 3057, subdivision (c) is disadvantageous to respondents, the Attorney General claims that extension of respondents' revocation terms did not increase "the length of the maximum parole period respondents would have served." In our view, this contention ignores the effect of subdivision (c) upon respondents, which was to lengthen their terms of incarceration, if not the maximum potential parole period. Our high court declared in *In re Ramirez* (1985) 39 Cal.3d 931 [218 Cal.Rptr. 324, 705 P.2d 897], that disadvantageousness is determined by examining "whether the system itself had been altered to the prisoners detriment." (*Id.*, at p. 936.) By providing for extension of a parolee's incarceration where none was possible before, subdivision (c) alters the system to the detriment of prisoners. As this court observed recently in *In re LeDay* (1985) 177 Cal.App.3d 461, 464 [221 Cal.Rptr. 398]: "Unquestionably the new provisions embodied in subdivision (c), permitting extension of a parolee's recommitment term for misconduct committed during that term *disadvantaged* LeDay in the requisite sense." (*Id.*, at p. 464, italics in original.)

■ As to the second part of the *Weaver* test, we must determine whether subdivision (c) is retrospective as applied to respondents. (*In re Ramirez, supra,* 39 Cal.3d 931, 936.) "For a law to be retrospective, 'it must apply to events occurring before its enactment.' (*Weaver, supra,* 450 U.S. at p. 29 [67 L.Ed.2d at p. 23].) A retrospective law violates the ex post facto clauses when it 'substantially alters the consequences attached to a crime already completed, and therefore changes 'the quantum of punishment.'" (*Ibid.*) "The critical question is whether the law changes the legal consequences of acts completed before its effective date." (*Weaver* v. *Graham, supra,* at p. 31 [67 L.Ed.2d at p. 24].)

Respondents submit that by extending the length of time for which a parolee may be recommitted upon a parole violation, subdivision (c) alters

the legal consequences attaching to a "crime" committed before the effective date of the statute. In so arguing, respondents focus upon the original crimes, committed before January 1, 1984, rather than their subsequent misconduct.

Our high court's decision in *In re Ramirez, supra,* 39 Cal.3d 931, is fatal to respondents' position. In *Ramirez,* the court considered an ex post facto challenge to a new statutory plan for awarding sentence reduction credits effective January 1, 1983. The petitioner committed a crime prior to the effective date of the 1982 amendments creating the new plan, but thereafter committed misconduct which resulted in a forfeiture of more behavior credits than he would have suffered under the former law. While acknowledging that the "amendments apply to petitioner only because he is a prisoner and that he is a prisoner only because of an act committed before the 1982 amendments[,]" the court concluded: "Nonetheless, the increased sanctions are imposed solely because of petitioner's prison misconduct occurring after the 1982 amendments became effective. In other words, the 1982 amendments apply only to events occurring *after* their enactment. If any aspect of prison life is unconnected to a prisoner's original crime, it would seem to be the sanctions for his misconduct while in prison. Accordingly, the 1982 amendments, which change the sanctions for that misconduct, do not relate to petitioner's original crime and are not retrospective under *Weaver.*" (*Id.,* at pp. 936-937, italics in original.)

Relying on *Ramirez,* this court rejected a claim that section 3057, subdivision (c) is an ex post facto law if applied to prisoners originally incarcerated for a crime committed before the effective date of the statute. (*In re LeDay, supra,* 177 Cal.App.3d 461, 464.) The court declared: "We perceive no practical or legal distinction between the circumstances in *Ramirez* and those of the present case. Both inmates were imprisoned for crimes occurring prior to the statutory change requiring additional custodial time for conduct occurring subsequent to the initial incarceration. Both inmates engaged in improper conduct after the change in the law. Both were on notice that future misbehavior could result in additional custodial time." (*Id.,* at pp. 464-465.)

We consider that the ruling in *LeDay* is consistent with the purpose underlying the prohibition against ex post facto laws. "Critical to relief under the *Ex Post Facto* Clause is not an individual's right to less punishment, but the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." (*Weaver* v. *Graham, supra,* 450 U.S. 24, 30 [67 L.Ed.2d 17, 24].) Subdivision (c) operates only to penalize parolees who engage in misconduct after its effective date. And the record shows that the Board of

Prison Terms formally advised all parolees that commencing January 1, 1984, acts of misconduct committed during a revocation term could result in an extension of commitment under subdivision (c).

We accordingly conclude that subdivision (c) is not ex post facto in its application to respondents.[2] The judgment is reversed and the petition for writ of mandate is denied.

Racanelli, P. J., and Elkington, J., concurred.

Respondents' petition for review by the Supreme Court was denied July 24, 1986.

---

[2]We express no opinion on the question of whether respondents can be incarcerated beyond the terms of their original sentences for subsequent misconduct in prison, that issue not having been presented to us in this appeal.