**Ex parte Jesus RUIZ, Jr.**

**No. 69933.**

Court of Criminal Appeals of Texas,
En Banc.

May 4, 1988.

Jesus Ruiz, Jr., pro se.

Robert Huttash, State's Atty. and Alfred Walker, First Asst. State's Atty., Carl E.F. Dally, Sp. Asst. State's Atty. and Matthew W. Paul, Asst. State's Atty., Austin, for the State.

**OPINION**

McCORMICK, Judge.

This is a post-conviction application for a writ of habeas corpus filed pursuant to Article 11.07, V.A.C.C.P. The applicant was convicted of possession of marihuana. Punishment was assessed at eighteen years' in the Texas Department of Corrections. The judgment reflects that the date of the commission of the offense was October 2, 1986.

In the present application, applicant contends that he is being denied consideration for the grant of additional good time credits from the Department of Corrections pursuant to the Prison Management Act (hereinafter the PMA), Article 6184o, V.A.C.S. Applicant contends that he was eligible for consideration for the time under the original act but not under the 1987 amendments to the act. We are of the opinion

that applicant is entitled to such consideration.

■ In *Ex parte Rutledge,* 741 S.W.2d 460 (Tex.Cr.App.1987), we held that the list of ineligible offenses contained in the 1987 amendments to the PMA may not be applied retroactively to one who committed his or her crime prior to the effective date of those amendments. Here the commission date was plainly prior to those amendments. Therefore, under *Ex parte Rutledge, supra,* applicant is entitled to such consideration. This holding does not entitle applicant to an automatic grant of the time credits which were denied him, nor to immediate release on parole even if the grant of additional time credits would make him eligible for parole release. The decision to grant time credits must be made within the framework of the Prison Management Act and the decision to release an inmate on parole, even though eligible, remains within the sound discretion of the Texas Board of Pardons and Paroles.

■ In addition to the brief filed by the pro se applicant, the State Prosecuting Attorney's Office has filed a motion moving this Court to file and set the applicant's petition. The motion does not seek to relitigate the issues decided in *Ex parte Rutledge,* but prays that this Court advise the State on the proper procedures to be used in implementing the PMA. In contrast, the applicant only addresses the narrow question of the retroactive application of the 1987 eligibility requirements. Applicant does not take issue with the procedures used to fix the amount of the awards to be given to inmates who have been determined to be eligible. We find, therefore, that the "relief" requested by the State is not within our jurisdiction. It is well-established that this Court is without constitutional or statutory authority to consider certified questions or render advisory opinions, except as provided by T.R.A.P. Rule 214. *Warren v. State,* 652 S.W.2d 779, 781 (Tex.Cr.App.1983); *Trevino v. State,* 655 S.W.2d 209, 210 (Tex.Cr.App.1983). We, therefore, refuse to address the State's contentions.

Habeas corpus relief is granted to the extent that the Department of Corrections must consider applicant for the grant of additional good time credits pursuant to the Prison Management Act.

It is so ordered.

Copies of this opinion will be sent to the Texas Department of Corrections and the Texas Board of Pardons and Paroles.

ONION, P.J., dissents.

MILLER, Judge, concurring in part and dissenting in part.

I concur with the holding in the majority opinion, as far as it goes. I must dissent however to the finding that "applicant does not take issue with the procedures used to fix the amount of the awards to be given to inmates who have been determined to be eligible." (slip opinion, page 2) Applicant's writ of habeas corpus is, to be sure, long and rambling; but as I read it, it does complain of the "procedures used" (to award good conduct time) with allegations such as:

> "... the enactment of (SAID AMENDMENTS) *attaches new disabilities* to the recipients of the fruits of (SAID ACT) *by imposing new time limitations,* and new classes of Offenses to deny the Petitioner the statutory good conduct time, the Petitioner would have received under the (SAID ACT) before the enactment of (SAID AMENDMENTS) which (SAID ACT) was in effect at the time of the petitioner's offense and sentence."
>
> * * * * * *
>
> "Nor, do (SAID AMENDMENTS) simply provide flexible guidelines but instead *create strict new standards* and provide new offense classes for exclusion of the good time which stopped Petitioner from receiving the statutory good time made available by (SAID ACT) and (SAID AMENDMENTS) directly and adversely affected the Petitioner's sentence."
>
> (transcribed verbatim, except emphasis supplied)

What applicant lacks in the finer command of English spelling and grammar, he more than makes up for in pleading.

I would also go further than the majority does and answer some of the troublesome questions presented here, because I believe that these questions must be answered in order to adequately and completely grant applicant the relief he prays for, to wit:

> "TO REMOVE ALL RESTRICTIONS PUT UPON PETITIONER BY THE ENACTMENT OF (SAID AMENDMENTS) TO (SAID ACT) ..."
>
> * * * * * *
>
> "GRANT PETITIONER BE AWARDED ALL GOOD TIME THAT WAS SUPPOSED TO BE AWARDED EACH TIME THE PRISON POPULATION REACHED 95 PERCENT OF CAPACITY IN ACCORDANCE WITH THE GUIDELINES AND LAW OF (SAID ACT) WHICH IS THE AWARD OF THIRTY (30) GOOD TIME UPON REACHING 95 PERCENT OF CAPACITY ..."
>
> (transcribed verbatim)

These questions involve:

1) Which date, of the possible dates that concern applicant, invokes the protection of ex post facto prohibitions; the date of offense, the date of conviction, the date of sentencing or the date of incarceration?

2) Convictions for which offenses will deny applicant eligibility for an award of good conduct time?

3) How much potential good conduct time is applicant eligible for?

4) What triggers the award of good conduct time?

Applicant clearly seeks to invoke the protections of Article I, § 9, clause 3, and § 10, clause 1, of the United States Constitution as they provide a prohibition against ex post facto laws. His complaints involve three separate acts of legislation of the Texas Prison Management Act, beginning with the act of 1983 (herein referred to as the 1983 PMA or act),[1] followed by amendments to the 1983 act and to Art. 42.18(c), V.A.C.C.P. (herein referred to as the 1986 PMA or act),[2] and finally the Texas Prison Management Act of 1987 (herein referred to as the 1987 PMA or act).[3] As will be seen, the various acts provided for different amounts of good conduct time to be awarded upon the occurrence of certain events to different classes of inmates. I will attempt to sort through this maze by the topics that need to be addressed in order to analyze the ex post facto problems presented by this application. Towards that end, I now write.

Date Affecting Entitlement to Ex Post Facto Protection

It cannot be seriously challenged that the parole eligibility law in effect *at the time of the offense,* not at the time of the sentencing or incarceration, controls the ex post facto question. That is, only those persons convicted of *offenses that occurred* when the 1983 act was in effect (between August 29, 1983 and September 29, 1986, inclusive) may claim ex post facto protection of benefits under the 1983 act. Those whose offenses occurred outside of these dates, even though they may have been tried, sentenced or incarcerated during those dates, simply cannot.[4] *Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). See generally *United States ex rel. Forman v. McCall* (1983,

1. Art. 6184*o* (Vernon's Supp.1983; Section 1, Ch. 233, Acts of the 68th Legislature, Regular Session, 1983, eff. August 29, 1983.

2. Sections 1, 2 and 3, Ch. 8, Acts of the 69th Legislature, Third Called Session, 1986, eff. Sept. 30, 1986.

3. Art. 6184*o* (Vernon's Supp.1987; Sections 1–14, Ch. 1, Acts of the 70th Legislature, Regular Session, 1987, eff. February 20, 1987.

4. It should be pointed out that by its very terms the 1987 act purports to apply to all inmates, regardless of date of offense, sentence, or incarceration, etc. Notwithstanding the aforementioned ex post facto protections and limitations involving date of offense, an inmate could nonetheless avail himself of equal protection or due process remedies if the 1987 act was not being applied to all of the inmates in the Texas Department of Corrections that the 1987 act covers.

C.A.3 Pa.) 709 F.2d 852; *State ex rel. Goiner v. Dees*, 366 So.2d 1353 (La.1978); *Adkins v. Bordenkircher*, 164 W.Va. 292, 262 S.E.2d 885 (1980); *In Re Lee*, 177 Cal. 690, 171 P. 958 (1918).

### Eligibility for Consideration of Good Conduct Time Award

*Ex Parte Rutledge*, 741 S.W.2d 460 (Tex. Cr.App.1987), when considered with the previous paragraph, held in essence that part of the 1987 act, specifically the part that added a list of offenses the conviction for which would place an inmate in a class ineligible for consideration of a good conduct time award under the PMA, could not be applied retroactively to inmates whose date of offense was prior to the effective date of the 1987 PMA but after the effective date of the 1983 PMA. The *Rutledge* decision dealt only with eligibility for consideration vis-a-vis the aforementioned list of offenses, however, and did not answer any of the other questions presented in this application. I believe the holding in *Rutledge, supra*, as interpreted in this paragraph, is correct. Thus, an inmate eligible, from the standpoint of the offense for which he was convicted, for an award of good conduct time credits under the 1983 or 1986 act, remains eligible under the 1987 act.

### The Amount of Good Conduct Time that May Be Awarded

All three PMAs provided for an award of good conduct time if the acts were triggered (see discussion infra). The potential award differed, however, as follows:

1983 act—30 days good conduct time awarded when PMA triggered; 60 days advancement of parole eligibility date possible if overcrowding persists;

1986 act—same potential awards as 1983 act;

1987 act—up to 90 days good conduct time awarded when PMA triggered, 120 days additional good conduct time or advancement of parole eligibility date possible if overcrowding persists; possibility of suspension of parole requirement of minimum fraction of sentence served for all inmates otherwise eligible for parole under 1987 PMA if overcrowding persists.

There is a threshold question of whether the amount of good conduct time that can be awarded under the ever changing PMA is a cognizable subject under the ex post facto doctrine. See *Kastel v. Fish*, 36 F.Supp. 700 (D.C.Md.1931); *In Re Canfield*, 98 Mich. 644, 57 N.W. 807 (1894). But that question need not be answered here. As can be readily seen, the 1987 act *benefits* inmates who might claim ex post facto protection under prior acts. With the exception that the initial award under the 1987 act *can* be for less that the minimum 30 days mandated by the earlier acts, the 1987 act awards are otherwise greater than or equal to those of the earlier acts. Thus, the 1987 act does not violate the second prong of the *Weaver v. Graham* test,[5] unless of course an inmate were awarded *less than* the 30 days he would have received under the 1983 or 1986 acts. Moreover, if an inmate is awarded at least 30 days good conduct time, such award cannot be said to violate the first prong (retroactivity) of the *Weaver v. Graham* test. *Butler v. U.S. Parole Com'n.*, 570 F.Supp. 67 (D.C.Md. 1983).

Thus, the provisions outlining the amount of potential award of good conduct time credits under the 1987 act do not per se violate any ex post facto prohibitions, though they may (as applied) if an inmate whose date of offense was between August 29, 1983 and February 19, 1987,[6] were to be awarded less than 30 days. In the latter event, it would be proper to answer the

5. "... our decisions prescribe that two critical elements must be present for a criminal or penal law to be ex post facto; it must be retrospective, that is, it must apply to events occurring before its enactment, and it must disadvantage the offender affected by it." *Weaver v. Graham*, supra, 450 U.S. at 29, 101 S.Ct. 964, 67 L.Ed.2d at 23.

6. The dates when the 1983 and 1986 acts, with their minimum 30 day good conduct time award, were in effect.

threshold question posed under this heading.

The Triggering Mechanisms of the PMAs

The three acts each promulgated slightly different triggering mechanisms for the award of good conduct time credits and advancement of parole eligibility dates. The 1983 act called for the director of the Texas Department of Corrections and the Governor of Texas to cross certify facts and make awards if the inmate population reached 95% or more of capacity. The 1986 act modified the 95% requirement to mandate that the population remain at 95% or more of capacity for five consecutive days, or 20 days in a 30 day period, before the interaction and awards were triggered. The 1987 act called for the Director, the Attorney General of Texas and the Governor to cross certify facts and begin awards if capacity reached 95%, with additional awards "if the crisis is not resolved".

As stated previously, in order for a retroactively applied law to amount to a violation of the ex post facto prohibitions in the Constitution, two conditions must be met. First, the change must be retrospective in its application. That is, it must apply to events occurring before its enactment. Second, the change must operate to the detriment of the accused. *Weaver v. Graham,* supra; *Kring v. Missouri,* 107 U.S. (17 Otto) 221, 2 S.Ct. 443, 27 L.Ed. 506 (1883). The detriment must amount to a material disadvantage, i.e., the punishment must be more severe. *Lindsey v. Washington,* 301 U.S. 397, 57 S.Ct. 797, 81 L.Ed. 1182 (1937); *Lewisburg Penitentiary v. Marrero,* 417 U.S. 653, 94 S.Ct. 2532, 41 L.Ed.2d 383 (1974).

In regard to the first prong (retroactivity), not every nuance of legislative penitentiary regulation that might affect the length of sentence is covered by ex post facto protection. In *Weaver v. Graham,* supra, the Supreme Court was careful to point out that the determination of whether a law is retroactive is whether it changes the legal consequences of acts completed before its effective date. Thus, in *In Re Nolasco,* 181 Cal.App.3d 39, 226 Cal.Rptr. 65 (1st Dist.1986), the California Court of Appeals ruled that a legislative increase in the time a parolee may be reincarcerated for a parole violation committed after the act's effective date was not retroactive even though applied to an inmate whose conviction was for an offense that occurred prior to the act's effective date. Quoting extensively from *Weaver v. Graham,* supra, the Court pointed out the purposes of the ex post facto prohibition were to ensure fair warning of the effects of legislative acts, to permit individuals to rely on their meaning until specifically changed, and to restrict governmental power by restraining arbitrary and potentially vindictive legislation. The Court found that the new changes were wholly triggered by actions, admittedly committed by the inmate, occurring after the effective date of the changes; that the changes were not arbitrary or vindictive; and that fair notice had been given to the inmates. Thus the underlying purposes of the ex post facto clause were served. *Dufresne v. Baer,* 744 F.2d 1543 (11th Cir.1984).

This concept of retroactivity is critical to deciphering when and which triggering mechanism of the act applies. The different triggering mechanisms have different nuance consequences, but the one common theme is that all of the good conduct time awards in each act are clearly triggered by an event that occurs *after* the effective date of the respective acts, not by the date of the inmate's offense. Thus the triggering mechanism of all three acts is neutral in regard to the ex post facto prohibition of our constitution. The triggering mechanism is simply not retroactive in its application.

Moreover, each act makes use of the same percentage of prison population, 95%, as the linchpin that unleashes the effects of the PMA. The remaining changes under the 1987 act are at best merely procedural [7]

7. A statutory change is procedural if its changes "neither made criminal a theretofore innocent act, nor aggravated a crime previously committed, nor provided greater punishment, nor changed the proof necessary to convict". *Dob-*

once the 95% population is reached. Thus, the triggering mechanism does not "substantially alter" the consequences attached to the crime already completed, as forbidden in *Weaver v. Graham,* supra.

I would therefore hold the triggering mechanism of the acts does not offend the ex post facto prohibition of our constitution and further hold that the triggering procedure in the 1987 act, rather than the 1983 or 1986 acts, applies now to all inmates, including applicant.

Only with these concepts in mind, may we determine what relief applicant is entitled to under his pleadings.

### Relief Applicant Is Entitled To

Since the date of the offense applicant was convicted of occurred in June of 1986, he falls within the ex post facto protections accorded one under the 1983 act. He is thus eligible for good conduct time, under *Rutledge, supra,* if his offense was one that entitled him to eligibility for good conduct time under the 1983 act.[8] The amount of good conduct time he is eligible for is between 30 and 90 days, if the good conduct time award provisions are triggered. The triggering mechanism applicable to applicant, and indeed all inmates, is that contained in the 1987 act.

These holdings are necessary to afford applicant the relief he has prayed for. Because the majority does not agree, but rather considers them "advisory" opinions, I dissent.

*bert v. Florida,* 432 U.S. 282, 293, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977).

**8.** There are of course other eligibility requirements of the 1987 act that must be met before applicant may be awarded good conduct time. See Art. 6184*o,* § 3. Applicant's pleadings do not contain assertions of fact concerning these requirements, thus he cannot be heard in this application to complain of any ex post facto application of these other requirements, if indeed they are subject to the ex post facto prohibition in the constitution.