Becker v. State



COURT OF APPEALS

EIGHTH DISTRICT OF TEXAS

EL PASO, TEXAS




RAUL GUERRERO,


 Appellant,


v.


THE STATE OF TEXAS,


 Appellee.
§


 


§


 


§


 


§


 


§


 


 § 

No. 08-05-00284-CR



Appeal from the


243rd District Court



of El Paso County, Texas 


(TC# 20040D01959)




OPINION


 Raul Guerrero appeals his conviction of improper photography or visual recording. 
Appellant waived his right to a jury trial and entered a non-negotiated plea of guilty. The trial court
found Appellant guilty and assessed his punishment at a fine of $500 and confinement for one year,
probated for two years. For the reasons that follow, we modify the judgment and affirm as modified.

FACTUAL SUMMARY


 The complainant, Nadiah Rodriguez, shared an apartment with Appellant beginning in 2001
but their relationship was always platonic. Rodriguez eventually moved out in October 2003 because
they were starting to "get on each other's nerves." She retained a key to his apartment and used it
from to time when she needed his computer. On February 15, 2004, Rodriguez and a group of
friends went to Appellant's apartment to watch a wrestling match on pay-per-view. She spent the
night at the apartment and slept on the futon in the living room. Early the next morning, she awoke
and saw that the television was on. She then saw the image of a naked female getting dressed. 
When she recognized the tattoo on the woman's back, she suddenly realized that she was watching
a video of herself. She then saw that Appellant was watching the video. Rodriguez shut her eyes
and pretended to be asleep. When she rolled over, Appellant shut off the television and removed the
tape from the VCR. He went into his bedroom and then left for work. Rodriguez went into the
bedroom and found the videotape, which was still warm, in an open drawer. She played it and saw
several instances of herself getting dressed. She removed the tape from the VCR and placed it in her
gym bag along with the camera which she found in another drawer. She took the items because she
did not want Appellant to have nude images of her. She immediately went to see a trusted friend,
Michael Gomez, who was in the hospital, because she needed to talk to someone about what had
happened. After she told Gomez about the videotape, he insisted that she call the police. Rodriguez
did not want to be alone so she called the police from the hospital. The police came to the hospital
and collected the evidence. 

 Detective Diane Kinder executed a warrant for Appellant's arrest on March 1, 2004. After
being Mirandized, Appellant waived his rights and gave a written statement. After he purchased the
camera, Appellant decided that he would film Rodriguez. It was Appellant's practice to wake
Rodriguez each morning by knocking on her bedroom door. Appellant connected the camera to the
VCR the night before and slid the camera under the door after giving Rodriguez the "wake up call." 
As he recorded Rodriguez, he could watch on television. He watched the nude images of Rodriguez
only twice. 

 A grand jury indicted Appellant of improper photography or visual recording, a state jail
felony. See Tex.Penal Code Ann. § 21.15 (Vernon Supp. 2006). Appellant filed a written motion
to suppress alleging that Rodriguez's seizure of the videotape was unlawful and the videotape should
be suppressed pursuant to Article 38.23 of the Code of Criminal Procedure. See Tex.Code
Crim.Proc.Ann. art. 38.23 (Vernon 2005). The trial court conducted a hearing on the motion and
denied it. After the Court of Criminal Appeals issued its opinion in Jenschke v. State, 147 S.W.3d
398 (Tex.Crim.App. 2004), Appellant re-urged the motion to suppress. The trial court again denied
the motion.

 On April 25, 2005, Appellant waived his right to a jury trial and initially entered a negotiated
plea of guilty. In exchange for his plea, the State agreed to reduce the offense to a Class A
misdemeanor pursuant to Section 12.44(b) of the Penal Code. The State also agreed to deferred
adjudication community supervision for a period of two years with certain terms and conditions of
probation. But the trial court rejected the plea bargain because the judge believed that
Section 12.44(b) (1) required a conviction which precluded him from granting deferred adjudication. 
The judge informed Appellant that he would follow every other aspect of the plea bargain but would
impose straight probation rather than deferred. The trial court specifically informed Appellant that
there was no plea agreement in the case and he would impose the sentence he believed was correct. 
Despite this admonishment, Appellant persisted in his guilty plea. Appellant asked for and received
permission to appeal the issue whether deferred adjudication could be granted in the case of a
Section 12.44(b) reduction. The court found Appellant guilty of the Class A misdemeanor of
improper photography and assessed his punishment at a fine of $500 and confinement in El Paso
County Detention Facility for one year, probated for two years. The judgment signed by the court
erroneously reflects that the plea of guilty was based on a plea bargain and that the reduction was
done pursuant to Section 12.44(a) even though the record of the guilty plea reflects that it was done
pursuant to Section 12.44(b). On this same date, and despite what had taken place at the guilty plea
proceeding, the trial court signed an order granting Appellant's motion for deferred adjudication. 

 Appellant filed his notice of appeal on May 2, 2005. The trial court certified that Appellant
had a right to appeal, there was a plea bargain in the case, and the court had given Appellant
permission to appeal. On May 18, 2005, the trial court signed an order granting Appellant's motion
for judgment nunc pro tunc because the original judgment contained a clerical error in that it
reflected that Appellant was convicted and sentenced pursuant to Section 12.44(a) when it should
have stated that Appellant was convicted and sentenced pursuant to Section 12.44(b). (2) 

 On June 1, 2005, the trial court signed a purported nunc pro tunc judgment which, like the
original judgment, erroneously reflected that the punishment was based on a plea bargain. The nunc
pro tunc judgment correctly reflects that Appellant pled guilty to a Class A misdemeanor; it does not
reflect the Section 12.44(b) reduction. Inexplicably and in direct contradiction to the trial court's oral
pronouncements at the guilty plea proceeding and the May 18, 2005 order, the trial court also
modified the judgment to reflect that Appellant's guilt had not been adjudicated, and that the court
placed Appellant on deferred adjudication community supervision for two years.

 On appeal, Appellant challenges the trial court's denial of his motion to suppress the
videotape and his written statement, and he challenges the trial court's refusal to consider his motion
for deferred adjudication. Before addressing the merits of the appeal, we will consider the validity
of the trial court's certification of Appellant's right to appeal and whether the nunc pro tunc
judgment should be reformed.

TRIAL COURT'S CERTIFICATION


 The trial court initially certified that Appellant has a right to appeal because the case involved
a plea bargain and the court had given Appellant permission to appeal. We entered an order finding
that the certification was defective because there was no plea bargain and we directed the trial court
to enter a new certification. The trial court entered an amended certification but found that there was
a "modified plea agreement." Based on this conclusion, the court again stated its finding that this
is a plea-bargain case and certified Appellant's right to appeal on that basis. The court alternatively
certified that Appellant pled guilty without a plea bargain but Appellant has a right to appeal any
claim of error permissible under Young v. State, 8 S.W.3d 656 (Tex.Crim.App. 2000). 

 Essentially, plea bargaining consists of the prosecutor making concessions regarding specific
punishment, lesser charges, or the reduction of counts which comprise the charging instrument in
exchange for the defendant's plea of guilty or nolo contendere. Ex parte Williams, 637 S.W.2d 943,
947 (Tex.Crim.App. 1982); see Wayne v. State, 756 S.W.2d 724, 728 (Tex.Crim.App. 1988)
(defining plea bargaining as a process which implies a preconviction bargain between the State and
the accused whereby the accused agrees to plead guilty or nolo contendere in exchange for a
reduction in the charge, a promise of sentencing leniency, a promise of a recommendation from the
prosecutor to the trial judge as to punishment, or some other concession by the prosecutor); Perkins
v. Court of Appeals, 738 S.W.2d 276, 282 (Tex.Crim.App. 1987)(same). A plea bargain is a
contractual agreement consisting of three parts: a plea of guilty, the consideration for the plea of
guilty, and approval of the agreement by the court. Ortiz v. State, 885 S.W.2d 271, 273 (Tex.App.--Corpus Christi 1994), aff'd, 993 S.W.2d 102 (Tex.Crim.App. 1996). Plea bargaining flows from the
mutuality of advantage to defendants and prosecutors each with his own reasons for wanting to avoid
trial. Ex parte Williams, 637 S.W.2d at 947, quoting Bordenkircher v. Hayes, 434 U.S. 357, 363,
98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978). The contract does not become operative until the court
announces it will be bound by the plea bargain agreement. Ex parte Williams, 637 S.W.2d at 947. 
When presented with a plea bargain, the court has discretion to accept or reject it. Ortiz, 885 S.W.2d
at 273. If the court does not approve the entire agreement, the defendant must be allowed to
withdraw his plea of guilty. Id.

 The State and Appellant initially had an agreement but the trial court refused to follow it
because the judge did not believe deferred adjudication is available under Section 12.44(b). Thus,
the plea bargain between the State and Appellant did not become operative. The judge informed
Appellant that he would follow every other aspect of the plea bargain but he would assess
punishment at one year in jail and place Appellant on straight community supervision for two years. 
With this understanding, Appellant informed the court that he still wished to proceed with his guilty
plea if the court gave him permission to appeal. The court agreed and gave Appellant permission
to appeal the issue whether deferred adjudication is available under Section 12.44(b). The following
exchange then occurred:

 [The trial court addressing the prosecutor]: Are you making a motion to the Court
to proceed, initially, as if this were a misdemeanor case under 1244(b)?


 [The prosecutor]: Yes, Your Honor, we are.


 [The trial court]: The Court will grant that. All right. Mr. Guerrero, you understand
that the plea agreement -- well, there is no plea agreement, but I'm simply going to
impose upon you the sentence that I think is correct in this case. Do you understand
that? [Emphasis added.]


 [Appellant]: Yes.


 [The trial court]: Do you still want to proceed with your plea of guilty?


 [Appellant]: Yes, sir. 


 [The trial court]: All right. Mr. Guerrero, to the Class A misdemeanor offense of
improper photography, in this case, how do you plea, guilty or not?


 [Appellant]: Guilty. 


 On first reading, the record tends to support a conclusion that there is no plea bargain because
the trial court refused to follow one aspect of the plea agreement entered into between the State and
Appellant. Further, the trial court judge expressly advised Appellant that there was no plea
agreement but he announced what punishment he would impose if Appellant continued with his
guilty plea. Given the trial court's refusal to impose deferred adjudication, the parties no longer had
an agreement regarding the specific punishment to be imposed in the case. However, there were
other significant elements of the plea agreement, namely, that Appellant would plea guilty in
exchange for a reduction of the charge to a Class A misdemeanor. Given that the prosecutor elected
to proceed with the guilty plea on the lesser charge, we conclude that the parties still had an
agreement that Appellant would plea guilty in exchange for the State's agreement to proceed on the
lesser charge. Thus, as the trial court concluded in its amended certification, there was a modified
plea bargain between the parties.

NUNC PRO TUNC JUDGMENT


 A defendant's sentence must be pronounced orally in his presence. Tex.Code
Crim.Proc.Ann. art. 42.03, § 1(a)(Vernon 2006); Taylor v. State, 131 S.W.3d 497, 500
(Tex.Crim.App. 2004); Ex parte Madding, 70 S.W.3d 131, 135 (Tex.Crim.App. 2002). The
judgment, including the sentence assessed, is just the written declaration and embodiment of that oral
pronouncement. Tex.Code Crim.Proc.Ann. art. 42.01, § 1; Taylor, 131 S.W.3d at 500; Madding,
70 S.W.3d at 135. When there is a conflict between the oral pronouncement of sentence and the
sentence in the written judgment, the oral pronouncement controls. Taylor, 131 S.W.3d at 500;
Thompson v. State, 108 S.W.3d 287, 290 (Tex.Crim.App. 2003); Madding, 70 S.W.3d at 135; Coffey
v. State, 979 S.W.2d 326, 328 (Tex.Crim.App. 1998). The rationale for this rule is that the
imposition of sentence is the crucial moment when all of the parties are physically present at the
sentencing hearing and able to hear and respond to the imposition of sentence. Madding, 70 S.W.3d
at 135. Once he leaves the courtroom, the defendant begins serving the sentence imposed. Id. Thus,
"it is the pronouncement of sentence that is the appealable event, and the written sentence or order
simply memorializes it and should comport therewith." Id., quoting Coffey, 979 S.W.2d at 328.

 A trial court has authority to correct clerical errors in the written judgment after the
expiration of the court's plenary power via entry of judgment nunc pro tunc. State v. Bates, 889
S.W.2d 306, 309 (Tex.Crim.App. 1994). The force and effect of a judgment nunc pro tunc relates
back to the date the original judgment was pronounced. See Jones v. State, 795 S.W.2d 199, 200 n.1
(Tex.Crim.App. 1990). A judgment nunc pro tunc, which literally means "now for then," may not
be used to correct "judicial" errors, i.e., those errors which are a product of judicial reasoning or
determination. Bates, 889 S.W.2d at 309. Instead, nunc pro tunc orders may be used only to correct
clerical errors in which no judicial reasoning contributed to their entry, and for some reason were
not entered of record at the proper time. Id.; see Alvarez v. State, 605 S.W.2d 615 (Tex.Crim.App.
1980)(holding erroneous recitation that judgment was entered in Criminal District Court Number
Three could be corrected nunc pro tunc as clerical error to reflect that the judgment was entered in
Criminal District Court Number Two six months after entry of final judgment). Thus, a judgment
nunc pro tunc is improper when it has the effect of making a new or independent judgment. Ex parte
Dickerson, 702 S.W.2d 657, 658 (Tex.Crim.App. 1986). Correction can be only as to what was done
and not as to what should have been done. Ex parte Dopps, 723 S.W.2d 669, 670 (Tex.Crim.App.
1986). The trial court retains this power to correct clerical mistakes in the judgment or sentence even
if the conviction is on appeal. Bates, 889 S.W.2d at 309. To the extent that there is a variance, a
trial court's oral pronouncement of the sentence controls over the written pronouncement. Madding,
70 S.W.3d at 135; Coffey, 979 S.W.2d at 328.

 The record reflects that the trial court found Appellant guilty of a class A misdemeanor and
assessed his punishment at a fine of $500 and confinement for one year, but suspended the sentence
and placed Appellant on straight community supervision for two years. The judgment nunc pro tunc,
however, erroneously reflects that the court deferred adjudicating Appellant's guilt and placed him
on deferred adjudication community supervision for two years. The nunc pro tunc judgment is
invalid in this regard for two reasons: (1) the trial court's oral pronouncement controls; and (2) the
judgment has the effect of making a new judgment. Consequently, we reform the judgment to reflect
that the trial court found Appellant guilty of improper photography, a Class A misdemeanor, and
assessed punishment at a fine of $500 and confinement for one year, suspended for two years. 

 The original judgment erroneously indicated that Appellant was convicted of a Class A
misdemeanor pursuant to Section 12.44(a) rather than Section 12.44(b). Although the trial court
signed an order granting Appellant's request to correct this clerical error, the nunc pro tunc judgment
did not make this correction. Accordingly, we also reform the judgment to reflect that Appellant's
conviction of a Class A misdemeanor is pursuant to Section 12.44(b).

MOTION TO SUPPRESS


 In Issue One, Appellant contends that the trial court abused its discretion by refusing to
suppress the videotape pursuant to Article 38.23 of the Code of Criminal Procedure. He additionally
asserts in his second issue that the trial court should have suppressed his written statement because
it was the product of the illegal search.

Standard of Review


 We review a trial court's ruling on a motion to suppress using the bifurcated standard of
review articulated in Guzman v. State, 955 S.W.2d 85 (Tex.Crim.App. 1997). See Carmouche v.
State, 10 S.W.3d 323, 327 (Tex.Crim.App. 2000); Krug v. State, 86 S.W.3d 764, 765 (Tex.App.--El
Paso 2002, pet. ref'd). At a suppression hearing, the trial judge is the sole trier of fact and judge of
the credibility of the witnesses and the weight to be given to their testimony. State v. Ross, 32
S.W.3d 853, 855 (Tex.Crim.App. 2000). Consequently, we do not engage in our own factual review. 
Id. Almost total deference is given to the trial court's ruling on questions of historical fact and
application of law-to-fact questions that turn on an evaluation of credibility and demeanor. 
Montanez v. State, 195 S.W.3d 101, 107 (Tex.Crim.App. 2006), citing Guzman, 955 S.W.2d at 89.
A trial court's rulings on mixed questions of law and fact that do not turn on the credibility and
demeanor of witnesses are reviewed de novo. Id. Furthermore, when a trial court fails to file
findings of fact, such as in this case, we view the evidence in the light most favorable to the trial
court's ruling. Ross, 32 S.W.3d at 855.

Article 38.23


 Article 38.23(a) provides:

 No evidence obtained by an officer or other person in violation of any provisions of
the Constitution or laws of the State of Texas, or of the Constitution or laws of the
United States of America, shall be admitted in evidence against the accused on the
trial of any criminal case.


Tex.Code Crim.Proc.Ann. art. 38.23(a)(Vernon 2005). Article 38.23 applies to the conduct of all
persons, including private persons not acting in concert with the police. See State v. Johnson, 939
S.W.2d 586, 587 (Tex.Crim.App. 1996). If Rodriguez obtained the videotape in violation of the law,
Article 38.23 would require suppression.

Jenschke v. State


 Citing Jenschke v. State, 147 S.W.3d 398 (Tex.Crim.App. 2004), Appellant argues that the
videotape and written statement must be suppressed because Rodriguez committed burglary of a
habitation and theft when she removed the videotape from his bedroom without his knowledge or
consent. A person commits burglary of a habitation if, without the effective consent of the owner,
he enters a habitation with intent to commit a felony, theft, or an assault; or remains concealed in a
habitation with intent to commit a felony, theft, or assault. Tex.Penal Code Ann. § 30.02(a)(1),
(2)(Vernon 2003). A person commits theft if he unlawfully appropriates property with intent to
deprive the owner of property. Tex.Penal Code Ann. § 31.03(a)(Vernon Supp. 2006). 
Appropriation is unlawful if it is without the owner's effective consent. Tex.Penal Code Ann. § 
31.03(b)(1).

 The evidence does not support a conclusion that Rodriguez committed burglary. As an
invited guest, Rodriguez entered the apartment with Appellant's effective consent. Further, there
is no evidence that she was ever concealed in the apartment, including when Appellant left for work
that morning.

 We now consider whether Rodriguez committed theft when she removed the videotape from
Appellant's apartment. In Jenschke, the Court of Criminal Appeals held that when a
non-governmental actor takes property that is evidence of a crime without the consent of the owner
and with the intent to turn the evidence over to the police, the conduct may be non-criminal even
though the person has the intent to deprive the owner. Therefore, Article 38.23 would not require
exclusion of the evidence. Jenschke, 147 S.W.3d at 402. But if the evidence establishes, as it did
in Jenschke, that the actor did not take the evidence with the intent to turn it over to law enforcement
authorities, the evidence must be excluded. Id. at 403. In that case, a girl told her parents that the
defendant, a relative, had sexually assaulted her two weeks earlier. The parents decided to look in
the defendant's truck for evidence. They went to the defendant's residence and used a hidden key
to look inside of the locked truck. They found a box which contained a condom believed to have
been used in the assault and an adult videotape. The parents did not immediately turn over the
evidence to the police; they were unsure what to do because of their strong family ties and religious
faith. Instead, the girl's mother informed the defendant's mother about the accusation. The
defendant denied the allegations when confronted by his mother. Approximately one year later, the
girl submitted to a polygraph examination and the polygrapher found she was telling the truth. 
Again, the defendant's family was informed of the polygraph results but they rejected it and would
not allow the defendant to be examined. They also threatened the girl's family. After several more
months passed, the girl's brother informed his parents that the defendant had also molested him. 
This new information had the effect of pushing the parents to take action regardless of family
relations. They took the evidence to a private DNA lab rather than contacting law enforcement
authorities. Upon learning that the girl's DNA was found on the outside of the condom and another
DNA profile inside of it, the girl's parents contacted the district attorney more than two years after
taking the evidence. The police obtained a search warrant for the defendant's blood, saliva, and hair. 
Subsequent testing established that the girl's DNA was present on the outside of the condom and the
defendant's DNA was present inside of it. The defendant was indicted for aggravated sexual assault
and his attorney filed a motion to suppress, alleging that the parents committed burglary of a vehicle
when they took the evidence from his truck. The Court of Criminal Appeals held that the evidence
established the girl's parents did not take the property with the intent to turn it over to an officer. 
Id. at 402-03. Because their conduct constituted burglary of a vehicle, Article 38.23(a) required the
exclusion of the evidence. Id. at 403.

 The instant case is distinguishable. First, the evidence in Jenschke clearly showed that the
parents did not intend to turn the evidence over to the police when they took the evidence. While
Rodriguez was unsure what to do with the videotape at the moment she removed it from Appellant's
apartment, she immediately consulted with a friend who advised her to call the police and turn over
the evidence. Rodriguez followed that advice and turned over the evidence shortly after taking it. 
This evidence is sufficient to support the trial court's implied conclusion that Rodriguez took the
evidence with the intent to turn it over to the police. See Hansen v. State, No. 01-05-01014-CR,
2006 WL 2192855 (Tex.App.--Houston [1st Dist.] 2006, pet. ref'd)(where stalking victim's mother
took evidence from defendant's residence and turned it over to police after consulting with her
husband, evidence supported inference that mother took property with intent to turn it over to
police).

Article 18.16


 The State additionally argues that Rodriguez's conduct in recovering her own stolen images
is justified under Article 18.16 of the Code of Criminal Procedure. That statute provides:

 Any person has a right to prevent the consequences of theft by seizing any personal
property that has been stolen and bringing it, with the person suspected of
committing the theft, if that person can be taken, before a magistrate for examination,
or delivering the property and the person suspected of committing the theft to a peace
officer for that purpose. To justify a seizure under this article, there must be
reasonable ground to believe the property is stolen, and the seizure must be openly
made and the proceedings had without delay.


Tex.Code Crim.Proc.Ann. art. 18.16 (Vernon 2005). Before someone may validly seize evidence
under Article 18.16, there must be reasonable grounds to believe that the property involved was
stolen. The term "reasonable grounds," as used in Article 18.16 , is synonymous with "probable
cause" under the Fourth Amendment. State v. Cantu, 776 S.W.2d 728, 730 (Tex. App.--Corpus
Christi 1989, pet. ref'd).

 The evidence supports a conclusion that Rodriguez had reasonable grounds or probable cause
to believe that Appellant had stolen the images of her naked body. It is undisputed that Appellant
did not have Rodriguez's consent to photograph or visually record her undressing and dressing in
her bedroom behind closed doors. Indeed, Appellant judicially confessed to visually recording
Rodriguez without her consent and with intent to arouse or gratify his sexual desire. Rodriguez
testified that she took the videotape because she did not want Appellant to have the nude images of
her. While Appellant may have owned the videotape on which the images were recorded, he did not
have a right to possess the images of Rodriguez which he had taken without her consent. We
therefore find that Rodriguez's actions in taking the videotape was justified under Article 18.16.
Consequently, she did not obtain the evidence in violation of any law and it was not subject to
suppression under Article 38.23(a). For the same reason, Appellant's written statement is not the
product of an illegal search. The trial court did not err in denying Appellant's motion to suppress
the videotape and his written statement. Issues One and Two are overruled.

DEFERRED ADJUDICATION


 In Issue Three, Appellant argues that the trial court erred by refusing to place him on deferred
adjudication in accordance with the terms of the plea agreement. Appellant asserts that the trial court
incorrectly concluded that deferred adjudication is unavailable under a former version of Section
12.44(b) of the Penal Code. In his prayer, Appellant requests that we reverse his conviction and
remand the case with instructions to the trial court to place him on deferred adjudication community
supervision. The State contends that the relief requested is not within our authority to grant, and any
opinion on the underlying issue would constitute an advisory opinion. We agree with the State.

 Texas courts do not have jurisdiction to issue an advisory opinion. Armstrong v. State, 805
S.W.2d 791, 794 (Tex.Crim.App. 1991); Ex parte Ruiz, 750 S.W.2d 217, 218 (Tex.Crim.App. 1988);
In re Salgado, 53 S.W.3d 752, 757 (Tex.App.--El Paso 2001, orig. proceeding). An advisory
opinion decides an abstract question of law without binding the parties. Texas Association of
Business v. Texas Air Control Board, 852 S.W.2d 440, 444 (Tex. 1993). An opinion is advisory
when the judgment sought would not constitute specific relief to a litigant or affect legal relations. 
Schecter v. Wildwood Developers, L.L.C., 214 S.W.3d 117, 121 (Tex.App.--El Paso 2006, no pet.);
Brinkley v. Texas Lottery Commission, 986 S.W.2d 764, 767 (Tex.App.--Austin 1999, no pet.). Appellant effectively asks that we reverse the conviction and return him to the point in the
guilty plea when the trial court was considering whether to accept or reject the plea bargain, and that
we additionally order the trial court to place him on deferred adjudication. In other words, Appellant
asks that we compel the trial court to place Appellant on deferred adjudication in accordance with
the original plea bargain. We lack the authority to grant this relief. The trial court is free to refuse
to allow plea bargaining or to reject a particular plea bargain entered into by the State and defense. 
State ex rel. Bryan v. McDonald, 662 S.W.2d 5, 9 (Tex.Crim.App. 1983); Morano v. State, 572
S.W.2d 550, 551 (Tex.Crim.App. 1978); Mayfield v. Giblin, 795 S.W.2d 852, 854 (Tex.App.--Beaumont 1990, no pet.). Assuming we agreed with Appellant that the trial court's interpretation
of Section 12.44(b) was erroneous, our only available option would be to reverse the conviction and
remand for a new trial. See Tex.R.App.P. 43.2 (types of judgment). Because we are unable to grant
the specific relief Appellant seeks, any opinion on the trial court's interpretation of Section 12.44(b)
would constitute an advisory opinion. Accordingly, Issue Three is overruled. The judgment of the
trial court is affirmed as modified.


May 17, 2007 

 ANN CRAWFORD McCLURE, Justice


Before Chew, C.J., McClure, and Carr, JJ.


(Do Not Publish)
1. The trial court was applying a prior version of Section 12.44(b) because the offense was committed prior to
September 1, 2005. The Legislature amended the statute in 2005. See Tex.Penal Code Ann. § 12.44(b)(Vernon Supp.
2006). The change in law applies only to offenses committed on or after the effective date of the statute, September 1,
2005.
2. The appellate record does not include Appellant's motion.