[No. B131626. Second Dist., Div. Seven. Dec. 18, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
CARLOS CALLEJAS, Defendant and Appellant.

**COUNSEL**

Jonathan B. Steiner, Richard Lennon and Barbara Gash, under appointments by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General,

Sanjay T. Kumar and G. Tracey Letteau, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**JOHNSON, Acting P. J.**—The only issue in this appeal is whether the constitutional ban on ex post facto laws prohibits imposing a parole revocation fine on a parolee who committed the underlying offense before the fine was enacted. We hold imposing the fine under these circumstances violates ex post facto principles. Accordingly we will modify the judgment by striking the revocation fine and affirm it in all other respects.

### FACTS AND PROCEEDINGS BELOW

In 1993 Carlos Callejas was arrested for driving while having a blood-alcohol level of .20 or higher. In 1998 he pled nolo contendere to this charge. The trial court suspended imposition of sentence and placed Callejas on three years' supervised probation. The terms of probation required Callejas to complete an 18-month alcohol rehabilitation program and attend Alcoholics Anonymous (AA) meetings a least five times per week. The trial court imposed a $200 restitution fine pursuant to Penal Code section 1202.4, subdivision (b).[1]

In 1999 the trial court found Callejas violated the terms of his probation by failing to enroll in the alcohol rehabilitation program and attend the required number of AA meetings. The court revoked probation and sentenced Callejas to two years in state prison. As part of the sentence, the court imposed and stayed a parole revocation fine under section 1202.45, which was enacted in 1995, two years after Callejas committed the underlying offense. The fine will remain suspended unless Callejas violates his parole.[2]

Callejas appeals from the judgment revoking his probation contending imposition of the parole revocation fine was barred by the ex post facto clauses of the United States and California Constitutions.[3]

---

[1]All statutory references are to the Penal Code unless otherwise noted.

[2]Section 1202.45 provides: "In every case where a person is convicted of a crime and whose sentence includes a period of parole, the court shall at the time of imposing the restitution fine pursuant to subdivision (b) of section 1202.4, assess an additional restitution fine in the same amount as that imposed pursuant to subdivision (b) of section 1202.4. This additional restitution fine shall be suspended unless the person's parole is revoked."

[3]The United States Constitution bars the passage of ex post facto laws by the federal government (art. I, § 9) and by state governments (art. I, § 10). The California Constitution,

## Discussion

■ A statute violates the ex post facto clause when, on its face or as applied, it retroactively " 'increase[s] the punishment for criminal acts.' "[4] Thus the prohibition on ex post facto laws prevents the government from changing the punishment for a criminal act after the act has been performed.[5]

In determining whether a statute involves "punishment" for purposes of the ex post facto clause, our Supreme Court has held "two factors appear important in each case: whether the Legislature intended the provision to constitute punishment and, if not, whether the provision is so punitive in nature or effect that it must be found to constitute punishment despite the Legislature's contrary intent."[6]

■ No legislative history exists to shed light on the intent behind section 1202.45.[7] It has been judicially recognized, however, "the entire statutory scheme concerning restitution fines" including section 1202.45 "has as its legislative purpose the recoupment from prisoners and potentially from parolees who violate the conditions of their parole some of the costs of providing restitution to crime victims."[8] Notwithstanding their ameliorative purpose, the courts have consistently held restitution fines qualify as "punishment" for purposes of the ex post facto clause.[9] Therefore, although the purpose of a restitution fine is not punitive, we believe its consequences to the defendant are severe enough that it qualifies as punishment for purposes of the ex post facto clause.[10]

article I, section 9 also bars the Legislature from enacting ex post facto laws. Because the ex post facto analysis is the same under both Constitutions (see *People v. Frazer* (1999) 21 Cal.4th 737, 754, fn. 15 [88 Cal.Rptr.2d 312, 982 P.2d 180]), we will refer simply to the ex post facto clause.

[4]*People v. Frazer, supra,* 21 Cal.4th at page 756, italics omitted, quoting from *Collins v. Youngblood* (1990) 497 U.S. 37, 43 [110 S.Ct. 2715, 2719, 111 L.Ed.2d 30].

[5]"Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed" is an ex post facto law. (*Calder v. Bull* (1798) 3 U.S. 386, (3 Dall.) 390 [1 L.Ed. 648, 650].)

[6]*People v. Castellanos* (1999) 21 Cal.4th 785, 795 [88 Cal.Rptr.2d 346, 982 P.2d 211], footnote omitted.

[7]*People v. Oganesyan* (1999) 70 Cal.App.4th 1178, 1185 [83 Cal.Rptr.2d 157].

[8]*People v. Oganesyan, supra,* 70 Cal.App.4th at page 1184.

[9]*People v. Saelee* (1995) 35 Cal.App.4th 27, 30-31 [40 Cal.Rptr.2d 790]; *People v. Downing* (1985) 174 Cal.App.3d 667, 672 [220 Cal.Rptr. 225]; and see *People v. McVickers* (1992) 4 Cal.4th 81, 84 [13 Cal.Rptr.2d 850, 840 P.2d 955] (noting for ex post facto purposes "there is little dispute that . . . extra fines are punishment").

[10]Compare *People v. Walker* (1991) 54 Cal.3d 1013, 1024 [1 Cal.Rptr.2d 902, 819 P.2d 861] (restitution fine is punishment for purposes of plea bargain).

It is also obvious that section 1202.45 increases the penalty for which Callejas is eligible beyond that which existed at the time he committed his offense because at the time he committed his drunk driving offense the parole revocation fine did not exist.

However, to be an ex post facto law the statute "must apply to events occurring before its enactment."[11] The difficulty in the present case lies in determining whether applying section 1202.45 to Callejas increases the quantum of punishment for his past offense of drunk driving or merely imposes new punishment for future misconduct which violates the terms of his parole. In other words, to which "event" is the new law being applied: the original offense or the subsequent parole violation?[12]

Callejas maintains imposition of the parole revocation fine is not punishment for future misconduct but rather constitutes increased punishment for the past offense which may be triggered by future misconduct. He points out his original sentence included a restitution fine under section 1202.4 in the amount of $200. The effect of section 1202.45 is to double the amount of the restitution fine *after* he committed his offense. A law which increases the punishment for a crime after the crime has been committed is the very model of an ex post facto law.[13] If the upper term for Callejas's offense had been four years at the time he committed it but the Legislature doubled that term to eight years prior to his trial it is beyond question Callejas could not be sentenced to the new eight-year term. By the same token, Callejas argues, he cannot be required to pay a fine twice the amount he could have been ordered to pay at the time he committed his offense.

In a similar vein, Callejas points out the amount of the fine under section 1202.45 is tied to the fine under section 1202.4 for the underlying offense. Section 1202.45 by its own terms sets the amount of the parole revocation fine "in the same amount as that imposed pursuant to subdivision (b) of section 1202.4." And, the amount of the fine under section 1202.4 is set "commensurate with the seriousness of the offense."[14] The two statutes taken together show the parole revocation fine is part of the punishment for the underlying offense, not for some future misconduct.

---

[11] *Weaver v. Graham* (1981) 450 U.S. 24, 29 [101 S.Ct. 960, 964, 67 L.Ed.2d 17].

[12] Section 3 provides: "No part of [the Penal Code] is retroactive, unless expressly so declared." However, an attempt to enforce this statutory restriction raises the same problem: Is application of section 1202.45 to Callejas a "retroactive" application of the statute? Compare *In re Harper* (1979) 96 Cal.App.3d 138, 141-142 [157 Cal.Rptr. 759].

[13] *Weaver v. Graham, supra*, 450 U.S. at pages 29, 33 [101 S.Ct. at pages 964, 966-967].

[14] Section 1202.4, subdividion (b)(1).

Callejas relies heavily on *Greenfield v. Scafati*,[15] the leading case involving retroactive application of parole violation statutes. In *Greenfield*, a prisoner who was incarcerated following revocation of his parole challenged a Massachusetts statute adopted after he committed his underlying offense which prohibited a parole violator from receiving good conduct credits during the first six months in custody following revocation. The court held application of the statute to Greenfield violated the ex post facto clause because the statute prevented him from being released as early as he might have been had he been able to amass good conduct credits under the statute in effect at the time he committed the underlying offense. As to a prisoner in Greenfield's position: "The difference between no penalty, other than a termination of the parole, and a substantial increase in imprisonment for violation, is far from inconsequential. To effect this by legislation enacted after the offense for which sentence was imposed cannot be constitutionally supported."[16] The court reached this conclusion despite the fact the new provision was necessarily triggered by conduct occurring *after* its enactment and petitioner had fair warning if he violated parole he would be subject to increased sanctions.[17]

Callejas bolsters his position with two additional arguments why the parole revocation fine cannot be deemed punishment for future wrongdoing.

Conduct which results in parole revocation is often not a crime. Under section 3053, subdivision (a) the Board of Prison Terms may "impose on the parole any conditions that it may deem proper." Thus, parole may be revoked if the parolee moves without his parole agent's permission, drives a car, consumes alcohol, visits his ex-wife or does a myriad other things which do not themselves constitute crimes.[18] If one accepts the proposition the parole revocation fine is a punishment separate from the restitution fine imposed as part of the underlying sentence then one would also have to accept that the Legislature intended to authorize a fine of up to $10,000[19] for failing to attend AA meetings or for moving from one county to another without permission. According to Callejas, the Legislature did not intend such an absurd result. Rather, the Legislature linked the parole revocation fine to the seriousness of the underlying offense, not the seriousness of the parole violation,[20] thus demonstrating the fine is further punishment for the underlying offense.

---

[15]*Greenfield v. Scafati* (D.Mass. 1967) 277 F.Supp. 644, 645-646 (affd. mem. (1968) 390 U.S. 713 [88 S.Ct. 1409, 20 L.Ed.2d 250]).

[16]*Greenfield v. Scafati, supra*, 277 F.Supp. at page 646.

[17]*Greenfield v. Scafati, supra*, 277 F.Supp. at pages 645-646.

[18]*In re Silverstein* (1942) 52 Cal.App.2d 725, 726-727 [126 P.2d 962].

[19]See section 1202.4, subdivision (b)(1).

[20]See sections 1202.45, 1202.4, subdivision (b)(1).

Finally, upon revocation of parole, suspension of the fine is lifted automatically "without the need for any further court proceeding."[21] Thus, when parole is revoked the fine is effective without any adjudication of bad conduct or the reason for the revocation. The only explanation for the total absence of due process in effectuating the fine, Callejas reasons, is that appropriate due process was afforded the defendant at the parole revocation hearing thereby further demonstrating the fine is an aspect of the original sentence and not a new punishment for subsequent behavior.

The People do not necessarily agree with Callejas's analysis. They point out his original sentence included a restitution fine of $200 which was based on the severity of his underlying offense—drunk driving.[22] The parole revocation fine has nothing to do with the original offense but results from Callejas's future, voluntary conduct. An ex post facto law "must apply to events occurring before its enactment."[23] Because Callejas was not even on parole when the Legislature enacted section 1202.45, any event resulting in revocation of his parole must necessarily occur *after* the enactment of the statute.

Two California Supreme Court cases support the People's position.

In *People v. Hainline*[24] the court adopted the future misconduct rationale in rejecting an ex post facto challenge to a law which stripped second offenders of protections otherwise afforded them by their successful completion of probation for their previous offense. At the time the defendant committed his prior burglary offense the law provided that upon successful completion of probation " 'the court shall thereupon dismiss the accusation or information against such defendant, who shall thereafter be released from all penalties and disabilities resulting from the offense or crime of which he has been convicted[.]' " Following the defendant's successful completion of probation he obtained a dismissal of the underlying charges. In the meantime the Legislature had amended the law to provide "if the probationer commits a second offense he shall forfeit all rights with which he was clothed at the time the court ordered the information dismissed . . . ."[25] Four years after obtaining dismissal of the previous offense, the defendant was arrested and charged with burglary and with having suffered a prior conviction. A jury found him guilty and found true the prior conviction allegation. On appeal, the defendant contended the amendment which purported to deny him the

---

[21]Section 3060.1.
[22]Section 1202.4, subdivision (b)(1).
[23]*Weaver v. Graham, supra,* 450 U.S. at page 29 [101 S.Ct. at page 964].
[24]*People v. Hainline* (1933) 219 Cal. 532 [28 P.2d 16].
[25]*People v. Hainline, supra,* 219 Cal. at pages 534-535, italics omitted.

protections he had earned from successful completion of his probation violated the ex post facto clause. The Supreme Court disagreed finding "[t]he amendment is not ex post facto and violates no constitutional provisions of the federal or state government, and is in harmony with our statutes. It provides clearly for the punishment of future crimes."[26] Quoting from a leading commentator on the constitution, the court explained: " '[A] law is not objectionable as ex post facto which, in providing for the punishment of future offenses, authorizes the offender's conduct in the past to be taken into account, and the punishment to be graduated accordingly. Heavier penalties are often provided by law for a second or any subsequent offense than for the first, and it has not been deemed objectionable that in providing for such heavier penalties the prior conviction authorized to be taken into account may have taken place before the law was passed. In such cases it is the second or subsequent offense that is punished, not the first.' "[27]

More recently our Supreme Court addressed the retroactivity element of the ex post facto clause in *In re Ramirez*.[28] The issue in *Ramirez* was whether rules adopted in 1982 pertaining to the forfeiture of behavior credits for misconduct while in prison could be applied to a prisoner who committed his underlying crime prior to 1982. The Supreme Court held applying the new rules to petitioner did not violate the ex post facto clause.[29] Rejecting petitioner's argument the new rules related to his original offense, not to the infraction he committed in prison, the court reasoned as follows: "It is true that the 1982 amendments apply to petitioner only because he is a prisoner and that he is a prisoner only because of an act committed before the 1982 amendments. Nonetheless, the increased sanctions are imposed solely because of petitioner's prison misconduct occurring after the 1982 amendments became effective. In other words, the 1982 amendments apply only to events occurring after their enactment. If any aspect of prison life is unconnected to a prisoner's original crime, it would seem to be the sanctions for his misconduct while in prison. Accordingly, the 1982 amendments, which change the sanctions for that misconduct, do not relate to petitioner's original crime and are not retrospective under *Weaver [v. Graham]*."[30]

Furthermore, the *Ramirez* court observed: "All that has changed are the sanctions for prison misconduct. . . . [P]etitioner's effective sentence is not altered· by the 1982 amendments unless petitioner, by his own actions, chooses to alter his sentence. . . . [¶] . . . [¶] We conclude that the

---

[26]*People v. Hainline, supra*, 219 Cal. at pages 535-536, italics omitted.

[27]*People v. Hainline, supra*, 219 Cal. at page 536, italics and citations omitted.

[28]*In re Ramirez* (1985) 39 Cal.3d 931 [218 Cal.Rptr. 324, 705 P.2d 897].

[29]*In re Ramirez, supra*, 39 Cal.3d at page 936.

[30]*In re Ramirez, supra*, 39 Cal.3d at pp. 936-937, italics omitted; see *Weaver v. Graham, supra*, 450 U.S. 24.

frequency and seriousness of a defendant's future prison misconduct is too contingent and remote to influence significantly either defendants or trial courts before plea and sentencing."[31] The court supported its holding by reference to "the policy behind the ex post facto clauses that criminal laws must give fair warning to those who may fall within their ambit. . . ."[32] In the present case, the court found, "petitioner had fair warning that if he committed certain offenses after January 1, 1983, he would be subject to increased sanctions."[33]

The *Ramirez* court acknowledged the opinion in *Greenfield v. Scafati*,[34] but did not consider *Greenfield* controlling in "the future-prison-misconduct context" for two reasons: "(1) the focus of *Greenfield* was not on the effect on prison administration of a holding that the statute was invalid, but on conduct outside the prison walls; (2) invalidating the statute as to certain prisoners did not have the effect of immunizing their future conduct from sanctions for prison rule violations. As far as one can tell, they remained subject to loss of credits for 'misbehavior.' "[35]

*Ramirez* has been followed in subsequent cases involving extended prison time for defendants who commit infractions while in prison.[36] Taken together, these cases arguably support the proposition a parole revocation fine is considered to be imposed for the parole violation rather than for the original offense.[37]

In the present case the People suggest the connection, if any, between Callejas's underlying offense and future misconduct on parole is too tenuous to support an ex post facto claim. They also point out Callejas will suffer no disadvantage as a result of the amended restitution scheme if he complies with the terms of his parole. If he does not comply he will suffer punishment in the form of a restitution fine but, in the People's view, that punishment is the result of his parole violation, not his drunk driving.

In our initial opinion addressing this issue we concluded imposition of the parole revocation fine is not an ex post facto increase in the punishment for

---

[31]*In re Ramirez, supra,* 39 Cal.3d at pages 937-938.

[32]*In re Ramirez, supra,* 39 Cal.3d at page 938, citation omitted.

[33]*In re Ramirez, supra,* 39 Cal.3d at page 938.

[34]See *Greenfield v. Scafati, supra,* 277 F.Supp. 644.

[35]*In re Ramirez, supra,* 39 Cal.3d at page 938.

[36]*In re LeDay* (1985) 177 Cal.App.3d 461, 464-465 [221 Cal.Rptr. 398]; *In re Nolasco* (1986) 181 Cal.App.3d 39, 43 [226 Cal.Rptr. 65].

[37]See *People v. Blunt* (1986) 186 Cal.App.3d 1594, 1600 [231 Cal.Rptr. 588] ("For purposes of the prohibition against ex post facto laws, . . . the parole revocation term is considered to be imposed for the parole violation rather than for the original offense.") For this proposition, the *Blunt* court cites *In re LeDay* and *In re Nolasco*; see footnote 36, *ante.*

the parolee's underlying offense because the parolee was given notice of the potential fine at the time of sentencing, the potential fine serves to deter a parolee from violating parole, and there is no indication the parole revocation fine was enacted out of vindictiveness or malice toward parolees. We noted, however, the question was close enough it would have warranted submission to Janus, the Roman god who could face in two directions at once.

Since we filed our initial opinion no Roman god has intervened—but the United States Supreme Court has. In *Johnson v. United States*,[38] the court held a postrevocation penalty relates to the original conviction, not the new conduct violating the terms of release.[39] Our own Supreme Court ordered us to vacate our initial opinion and reconsider the issue in light of *Johnson*.

Accordingly, we asked the parties for supplemental briefing on the effect of *Johnson* on the issue before us. Both sides agree that under *Johnson*'s reasoning the ex post facto clause forbids imposing a parole revocation fine on a parolee who committed the underlying crime prior to enactment of the fine. After considering the parties' briefs and the *Johnson* decision, we concur.

In *Johnson*, the defendant was convicted in federal court and sentenced to a term in prison to be followed by a period of supervised release, the federal equivalent of parole. After being released from prison and while serving his period of supervised release, defendant was arrested and convicted of four new crimes. Finding defendant had violated the terms of his supervised release, the district court revoked his release, imposed a prison term of 18 months and ordered him placed on supervised release for 12 months after serving his term of imprisonment. Defendant appealed his sentence arguing that at the time he committed his original offense the district court had no authority to impose another term of supervised release following his reimprisonment for violating the terms of the initial supervised release. He conceded the district court had that authority under a statutory amendment enacted after he committed his initial offense but he maintained the amendment could not be applied to him without violating the ex post facto clause.[40]

The Sixth Circuit Court of Appeals rejected defendant's argument reasoning the statutory amendment authorizing a new term of supervised release was not being applied retroactively to increase defendant's punishment for

[38]*Johnson v. United States* (2000) 529 U.S. 694 [120 S.Ct. 1795, 146 L.Ed.2d 727].
[39]*Johnson v. United States, supra*, 529 U.S. at page 701 [120 S.Ct. at page 1801].
[40]*Johnson v. United States, supra*, 529 U.S. at page 698 [120 S.Ct. at page 1799].

his original offense but prospectively to punish defendant's violation of the conditions of his supervised release.[41]

The Supreme Court disagreed with the Sixth Circuit's reasoning. The court observed that contrary to the Sixth Circuit's view most federal courts had treated postrevocation sanctions as part of the penalty for the initial offense[42] and that "such treatment is all but entailed by our summary affirmance of *Greenfield v. Scafati . . .* in which a three-judge panel forbade on ex post facto grounds the application of a Massachusetts statute imposing sanctions for violation of parole to a prisoner originally sentenced before its enactment."[43] The court also noted: "[S]erious constitutional questions . . . would be raised by construing revocation and reimprisonment as punishment for the violation of the conditions of supervised release. Although such violations often lead to reimprisonment, the violative conduct need not be criminal and need only be found by a judge under the preponderance of the evidence standard, not by a jury beyond a reasonable doubt. . . . Where the acts of violation are criminal in their own right, they may be the basis for separate prosecution, which would raise an issue of double jeopardy if the revocation of supervised release were also punishment for the same offense. Treating postrevocation sanctions as part of the penalty for the initial offense, however[,] . . . avoids these difficulties. . . . We therefore attribute postrevocation penalties to the original conviction."[44]

As appears from the opinion in *Johnson*, the Supreme Court essentially accepted the arguments advanced by Callejas in the present case. The court found its summary affirmance of *Greenfield v. Scàfati*[45] to be controlling authority for the proposition the ex post facto clause forbids applying a statute imposing sanctions for violation of parole to a person originally sentenced before the statute's enactment.[46] In addition, the court agreed with Callejas as to why imposition of punishment upon revocation of parole cannot be related to the new offense which triggered revocation. Principally, the court reasoned punishment imposed upon the revocation of supervised

[41]*Johnson v. United States, supra,* 529 U.S. at pages 696-700 [120 S.Ct. at pages 1799-1800.]

[42]*Johnson v. United States, supra,* 529 U.S. at pages 699-700 [120 S.Ct. at page 1800].

[43]*Johnson v. United States, supra,* 529 U.S. at pages 701-702 [120 S.Ct. at page 1801]; and see *Greenfield v. Scafati, supra,* 277 F.Supp. 644.

[44]*Johnson v. United States, supra,* 529 U.S. at pages 700-701 [120 S.Ct. at pages 1800-1801]. Although Johnson won the battle, he lost the war. The Supreme Court ultimately decided that while applying the statutory amendment retroactively would violate the ex post facto clause it was not necessary to apply the amendment retroactively because district courts had had the power to reimpose a term of supervised release all along; the statutory amendment was merely declarative of existing law. (529 U.S. at pages 696-698 [120 S.Ct. at page 1799]).

[45]See *Greenfield v. Scafati, supra,* 277 F.Supp. 644.

[46]*Johnson v. United States, supra,* 529 U.S. at pages 701-702 [120 S.Ct. at page 1801]; and see discussion at pages 672-673, *ante.*

release (or parole) cannot be related to the offense which triggered the revocation because revocation does not necessarily require a new offense.[47] Furthermore, where the person on release does commit a criminal act, punishing the person for the act and for violating the terms of his release would raise serious issues of double jeopardy and due process.[48]

The People concede that under the reasoning in *Johnson*, the ex post facto clause forbids imposing a parole revocation fine on a parolee who committed the underlying crime prior to the enactment of the fine.

We see no principled way of distinguishing *Johnson* from the present case. Imposition of a parole revocation fine under section 1202.45 is clearly a postrevocation penalty[49] and, under *Johnson*, we must "attribute postrevocation penalties to the original conviction."[50] Therefore, applying section 1202.45 to Callejas, whose underlying crime preceded the enactment of that statute, would violate ex post facto principles.

## DISPOSITION

The judgment is modified by striking the parole revocation fine under section 1202.45. As so modified, the judgment is affirmed.

Woods, J., and Neal, J., concurred.

---

[47]*Johnson v. United States, supra*, 529 U.S. at pages 699-700 [120 S.Ct. at page 1800]; and see discussion at page 673, *ante*.

[48]*Johnson v. United States, supra*, 529 U.S. at pages 699-700 [120 S.Ct. at p. 1800]; and see discussion at pages 673-674, *ante*.

[49]See discussion at pages 670-671, *ante*.

[50]*Johnson v. United States, supra*, 529 U.S. at pages 701-702 [120 S.Ct. at page 1801].