Filed 6/14/13  P. v. Nguyen CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>LAP PHUONG NGUYEN,<br><br>    Defendant and Appellant. | G046381<br><br>(Super. Ct. No. 11WF1672)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Richard M. King, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Robert L.S. Angres, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Lilia E. Garcia and Felicity Senoski, Deputy Attorneys General, for Plaintiff and Respondent.

\*        \*        \*

Defendant Lap Phuong Nguyen was convicted of receiving stolen property, unlawful acquisition of access card information, and vehicle burglary. On appeal, defendant challenges the sufficiency of the evidence supporting one of his convictions, and raises several sentencing-related issues.

We conclude there was sufficient evidence of vehicle burglary. Although mere possession of stolen property is not enough to support a conviction for burglary, defendant's presence at the scene of the crime was sufficient corroborating evidence. We therefore affirm defendant's conviction for vehicle burglary.

We agree that defendant is entitled to additional presentence custody credits, but because defendant's crimes were committed before October 1, 2011, he is not entitled to accrue good conduct credits at the current rate specified in Penal Code section 4019, subdivision (f).

Defendant was ordered to pay restitution to two victims. We agree with defendant and the Attorney General that the award to one of those victims (Cindy Dang) must be stricken because her losses did not occur as a result of defendant's criminal conduct; defendant was convicted of unlawful acquisition of Dang's access card information, but was acquitted of burglarizing the vehicle from which Dang's property was taken. We remand the matter to the trial court to conduct a restitution hearing as to the other victim (Giangtuyet Vu), to determine whether defendant's criminal conduct was a substantial factor in causing her loss.

Finally, we reverse the restitution and parole revocation fines imposed by the trial court and direct the court to impose fines in the amount provided by statute at the time defendant's crimes were committed.

STATEMENT OF FACTS AND PROCEDURAL HISTORY[1]

In November 2009, Huong Thi Nguyen saw defendant as she was pulling into the parking lot of a Westminster, California, cemetery; Nguyen recognized defendant because he had previously patronized a coffee shop she owned. Defendant acknowledged Nguyen by smiling at her. Nguyen left her purse in her locked car, and made a visit to a gravesite for about 30 minutes. When Nguyen returned to her car, she noticed broken glass inside the car, and that her purse was missing. The following items were in Nguyen's purse when it was stolen: a checkbook, credit cards, about $400 in cash, and her driver's license.

Later that same month, Giangtuyet Vu left her purse in her locked car and entered a store. When she returned to the car, her purse was gone. The car did not appear to have been broken into. Vu's purse contained eight money orders, each in the amount of $1,000; credit cards; a Costco membership card; a debit card; Vu's driver's license; her social security card; and $11,500 in cash.

In December 2009, Cindy Dang was at a martial arts studio with her sister; Dang parked her sister's van in an alley behind the studio. Dang's sister later discovered a window of the van had been broken. Although Dang did not testify at trial, she told the probation officer her purse had been stolen; the purse contained $1,800 in cash, two gift cards valued at $100 each, credit cards, and her driver's license.

Defendant's room was searched in January 2010. Among other items, the police found a driver's license and an access card belonging to Nguyen; Vu's driver's license, credit cards, and access cards; and a driver's license and AAA card belonging to Dang.

---

[1] Given the limited nature of the issues raised by defendant's appeal, we will only discuss the facts of the relevant crimes.

Defendant was charged with receiving stolen property (count 1); unlawful acquisition of access card information (counts 2, 3 (Vu), 4 (Nguyen), and 5 (Dang)); second degree vehicle burglary (counts 6 (Nguyen's car) and 7 (Dang's sister's van)); and second degree commercial burglary (count 8). The information alleged defendant had one prior strike conviction, and had served two prior prison terms. During trial, the prosecutor moved to dismiss count 8, and the trial court granted the motion. The court granted a motion for a judgment of acquittal as to counts 2 and 7. A jury found defendant guilty of all remaining counts. In a bifurcated proceeding, defendant admitted the prior strike conviction and prison term allegations were true.

The trial court sentenced defendant to a total of 12 years in prison: the upper term of three years on count 3, plus consecutive eight-month terms on counts 1, 4, and 5, doubled and enhanced due to the findings on the priors. Execution of the sentence on count 6 was stayed. The court awarded defendant 212 days of presentence custody credit. The court also imposed a $240 restitution fine and a $240 parole revocation fine. Defendant timely appealed.

DISCUSSION

I.

*SUFFICIENCY OF THE EVIDENCE*

Defendant contends the evidence is insufficient to support his conviction on count 6, the vehicle burglary of Nguyen's car at the cemetery.

Vehicle burglary requires proof that a defendant entered a locked vehicle with the intent to commit theft or any felony. (Pen. Code, § 459; CALCRIM No. 1700.) Possession of recently stolen property, alone, is not sufficient to support a conviction for burglary; however, it is so incriminating that only slight additional corroborating evidence is needed. (*People v. McFarland* (1962) 58 Cal.2d 748, 754-755; CALCRIM No. 376.) Defendant was unquestionably in possession of property stolen from Nguyen's car, specifically her driver's license and access card. The corroborating evidence was

4

Nguyen's testimony that she saw defendant as she entered the parking lot of the cemetery, where the crime occurred. The evidence presented to the jury did not have the potential taint of mistaken eyewitness testimony: Nguyen actually knew defendant, who had been a customer at a coffee shop Nguyen previously owned, and defendant acknowledged Nguyen by smiling at her that day. Based on that corroborating evidence, the jury could properly infer, based on defendant's possession of Nguyen's stolen property, that defendant entered Nguyen's locked car with the intent to commit theft. Therefore, the conviction on count 6 is supported by substantial evidence.

II.

*PRESENTENCE CUSTODY CREDITS*

Defendant spent 177 days in custody between July 21, 2011 (the date of his arrest) and January 13, 2012 (the date of his sentencing). The trial court awarded defendant 177 days of actual custody credit, and 35 days of good conduct credit, for a total of 212 days.[2] Based on the law applicable at the time defendant committed the crimes, he was entitled to two days of good conduct credit for every four days of actual custody credit. (Pen. Code, former § 4019, subd. (f); compare *id.*, § 4019, subds. (f), (h).) Therefore, as the Attorney General concedes, the trial court should have awarded defendant 88 days of good conduct credit, for a total of 265 days of presentence custody credit. We will direct the trial court to correct its minute order and the abstract of judgment to properly reflect defendant's presentence custody credit.

Defendant argues he was entitled to receive two days of good conduct credit for every two days of actual custody, during the period after October 1, 2011. The 2011 amendment to the rate at which good conduct credits accrue applies only to

---

[2] Although defendant's trial counsel agreed with the prosecutor that defendant was entitled to 212 days of presentence custody credit, defendant did not forfeit this issue on appeal. "A sentence that fails to award legally mandated custody credit is unauthorized and may be corrected whenever discovered." (*People v. Taylor* (2004) 119 Cal.App.4th 628, 647.)

5

defendants who committed their crimes after October 1, 2011. Because defendant committed his crimes before October 1, 2011, the previous, lower rate of good conduct credit accrual applies to his entire presentence custody period. (*People v. Rajanayagam* (2012) 211 Cal.App.4th 42, 51-52.)

III.

*RESTITUTION AWARDS*

The trial court ordered defendant to pay restitution as follows: (1) to Vu, in the amount of $19,500, for the loss of cash and money orders; and (2) to Dang, in the amount of $2,495, for the loss of a purse, a wristlet, cash, a Costco gift card, and a Ross gift card, and for damages due to a broken window in Dang's sister's van. Defendant's trial counsel stipulated to the amount of restitution to be ordered. On appeal, defendant argues his trial counsel provided ineffective assistance of counsel. The Attorney General does not argue that the issue of restitution has been forfeited; therefore, we address the issue on its merits.

"It is the intent of the Legislature that a victim of crime who incurs an economic loss as a result of the commission of a crime shall receive restitution directly *from a defendant convicted of that crime*." (Pen. Code, § 1202.4, subd. (a)(1), italics added; see also *People v. Lai* (2006) 138 Cal.App.4th 1227, 1249 ["section 1202.4 limits restitution to losses caused by the criminal conduct for which the defendant was convicted"].) "[I]n every case in which a victim has suffered economic loss *as a result of the defendant's conduct*, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court." (Pen. Code, § 1202.4, subd. (f), italics added.)

As the Attorney General concedes, the restitution award to Dang was improper. Dang's losses were all related to a vehicle burglary on December 23, 2009. However, the trial court granted a motion to acquit defendant of the charge of

burglarizing Dang's sister's van. (Pen. Code, § 1118.1.) The order for restitution to Dang must therefore be reversed. (*People v. Percelle* (2005) 126 Cal.App.4th 164, 180 ["'a restitution order is not authorized where the defendant's only relationship to the victim's loss is by way of a crime of which the defendant was acquitted'"].)[3]

With respect to Vu, all of her losses stemmed from the burglary of her car. Defendant was never charged with or convicted of that car burglary, although he was convicted of possession of Vu's access card. The Attorney General contends this is sufficient to establish defendant's criminal conduct was a substantial factor in causing Vu's loss.

In support of her argument, the Attorney General cites *People v. Holmberg* (2011) 195 Cal.App.4th 1310. In that case, computer equipment and credit cards were stolen from businesses in San Jose, California. (*Id.* at pp. 1313-1314.) The defendant and his girlfriend were observed on surveillance videos, using a stolen credit card the next day. (*Id.* at p. 1314.) Some of the stolen computer equipment was found when a search warrant was executed at the defendant's home. (*Ibid.*) The defendant was charged with, and pleaded no contest to, concealing stolen property and using an altered, stolen, or counterfeit access card. (*Id.* at p. 1315.) He was ordered to pay restitution of $18,072, including the replacement cost of stolen computers and $10,000 for the loss of business and productivity after the burglary. (*Id.* at pp. 1316, 1318.) The defendant argued he could not be ordered to pay restitution because he did not commit the burglary, and the restitution award was not causally related to his crime of possessing stolen property. (*Id.* at p. 1318.) The appellate court concluded that while the victim companies' losses were the direct result of the burglaries, the defendant's possession of the stolen property was also a substantial factor in causing the victim's loss. (*Id.* at pp. 1322-1324.)

---

[3] Dang's driver's license and AAA card were found in defendant's room. Dang did not claim any losses due to the theft of those items.

7

The court in *People v. Holmberg*, *supra*, 195 Cal.App.4th at page 1322, explained: "Although defendant denies burglarizing the victims' premises, the evidence here supports the conclusion that defendant's conduct was a concurrent cause of the victims' losses and a substantial factor in depriving them of the use of their property. There was evidence that defendant received the stolen property on the day it was stolen. Henderson admitted that she and defendant used a stolen credit card at Taco Bell and 7-Eleven on the day of the Stonecrest burglary; both defendant and Henderson admitted using the stolen credit card at Target the day after. Henderson told police that several computers and monitors showed up at their home at that time and that defendant 'fixed' the computers and sold them on craigslist. By the time the police executed a search warrant almost two months after the burglaries, the monitors were gone and the computers had been altered to the point that only the hard drives were recovered. Defendant admitted he knew the property was stolen when he possessed it. He argues that since the stolen property did not have any distinctive markings, he was prevented . . . from returning it to its rightful owner. However, nothing prevented defendant from turning over the known stolen items to the police. For these reasons, we conclude that defendant's concealing of the stolen property was a concurrent cause in depriving the victims of the use of their property. It is significant that defendant obtained the property the day it was stolen. Had he contacted law enforcement about the items when he received them, Stonecrest would not have had to replace them or incur a one-week loss of business and productivity. Defendant's conduct played far more than a negligible or theoretical part in bringing about the victims' injuries and was a substantial factor in causing the harm they suffered."

We agree with the Attorney General that the issue of restitution to Vu "is not . . . clear cut." The Attorney General contends there is some evidence linking defendant's conviction for unlawful acquisition of Vu's access card information with Vu's loss of $11,500 in cash and $8,000 in money orders. As to the money orders, the

8

Attorney General relies on the following from the probation report: "On November 12, 2009, victim Giang V. reported her purse, which contained numerous access cards, $11,500 in cash, eight blank money orders for $1,000 each, a driver's license, and a social security card, was taken from her vehicle. On November 24, 2009, the stolen money orders were deposited into an ATM. Giang's driver's license and access cards were later recovered from the defendant's residence." Other than defendant's possession of some of the property that was located in Vu's stolen purse, there is no apparent connection in our record between the crime of which defendant was convicted—unlawful acquisition of access card information—and the losses Vu claims to have suffered. That the stolen money orders were deposited into an unidentified account by means of an ATM does not connect defendant to them; the probation report does not state defendant made the deposit, or the money orders were deposited into his account.

All matters of restitution to Vu should be resolved by conducting a restitution hearing pursuant to Penal Code section 1202.4. The trial court should consider all issues pertaining to the entire amount of loss claimed by Vu, not solely the $11,500 in cash.

## IV.

### RESTITUTION FINES

The trial court imposed a $240 restitution fine and a $240 parole revocation fine at sentencing. The court initially imposed fines of $200 each, but then increased the fines, based on the mistaken assumption that recent changes in the statutes authorizing the fines applied to defendant. Effective January 1, 2012, Penal Code former section 1202.4, subdivision (b)(1) was amended to increase the minimum restitution fine from $200 to $240. (Stats. 2011, ch. 358, § 1.)[4] Because all of defendant's crimes occurred before January 1, 2012, it would violate ex post facto laws to impose the higher

---

[4] Penal Code section 1202.45, subdivision (a) provides that a parole revocation fine shall be imposed in the same amount as the restitution fine.

9

fines on defendant. (*People v. Callejas* (2000) 85 Cal.App.4th 667, 678; *People v. Downing* (1985) 174 Cal.App.3d 667, 672.) We therefore direct the trial court to modify its minute order and the abstract of judgment to reflect that the minimum restitution fine and parole revocation fine are $200 each.

DISPOSITION

We direct the trial court to amend the minute order and the abstract of judgment to (1) award defendant a total of 265 days of presentence custody credit, and (2) set the minimum restitution fine and the minimum parole revocation fine at $200 each. The trial court shall forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation. We reverse the order for restitution and abstract of judgment in favor of Cindy Dang in the amount of $2,495. We further reverse the order for restitution and abstract of judgment in favor of Giangtuyet Vu in the amount of $19,500, and direct the trial court to conduct a restitution hearing pursuant to Penal Code section 1202.4, as to all of Vu's claims for restitution. In all other respects, the judgment is affirmed.

FYBEL, ACTING P. J.

WE CONCUR:

IKOLA, J.

THOMPSON, J.

10