Filed 10/16/13 P. v. Ponce CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B240885 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA351149) |
| v. | |
| ISIDRO PONCE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Dennis J. Landin, Judge. Affirmed as modified.

Jeralyn Keller, under appointment by the Court Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and Stacy S. Schwartz, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \* \* \* \* \* \*

Defendant Isidro Ponce appeals from the judgment entered following a jury trial that resulted in his conviction of first degree murder (Pen. Code, § 187, subd. (a)).[1]  The trial court sentenced him to prison to 25 years to life and imposed a $200 restitution fine (§ 1202.4, subd. (b)), imposed and stayed a $200 parole revocation fine (§ 1202.45), imposed a $40 court security assessment and a $30 criminal conviction assessment.  He was awarded presentence credit in the amount of 1,178 days of actual custody.

Defendant contends the trial court abused its discretion and violated his constitutional rights to a fair trial and to counsel by denying his standby counsel's motion for a continuance.  He contends, and respondent concedes, the $200 parole revocation fine must be stricken under the ex post facto clauses of the United States and California Constitutions, because section 1202.45 was enacted and became effective after the date of his offense.  He further contends, and respondent agrees, he must be awarded presentence conduct credit in addition to his actual custody credit, because he committed the murder in 1990, which was before the effective date of section 2933.2, the statutory provision that prohibits a convicted murderer from accruing conduct credit.

We conclude the trial court acted well within its broad discretion in denying the motion for a continuance at trial.  We modify the judgment, however, by striking the $200 parole revocation fine and by adding 588 conduct credit days to his award of 1,178 actual custody days for a total presentence credit award of 1,766 days.  As so modified, we affirm the judgment.

**BACKGROUND**

On February 26, 1990, the body of Alma Harvey, age 83, was discovered on her bed in her Los Angeles duplex.  She had died from asphyxia caused by manual strangulation.  What appeared to be dried semen was located on the bedspread near her thigh, and her pajama bottoms and an adult diaper were down around her ankles.  During a cold case investigation 12 years later, in February 2002, sperm cells were found on the bedspread.  Their DNA profile matched the DNA profile on defendant's reference swab.

---

[1]     All further section references are to the Penal Code.

2

In a police interview in English, defendant stated he used to clean Ms. Harvey's house and that on the day of her murder, they had had consensual sex at her insistence on the kitchen sink. Afterward, he placed Ms. Harvey in her wheelchair and left her on a living room couch. He later stated Harvey complained she could not breathe after their intercourse. She was limp and no longer speaking when he took her in the wheelchair to her bed. He believed Ms. Harvey died "because of what happened that day."

During a later interview in Spanish, defendant told police a different account of what had happened. He stated a neighbor knocked on Ms. Harvey's door while they were having sex on her bed. Ms. Harvey told defendant she was going to tell the neighbor that defendant was "much better than him." Defendant grabbed her neck and told her to be quiet. Ms. Harvey said she was not feeling well. Not knowing what to do, he left. Ms. Harvey was still in her bed with her pants up and her eyes closed.

Defendant did not present any evidence on his behalf.

## DISCUSSION

### 1.      Denial of Continuance Not Abuse of Discretion or Denial of Due Process

Defendant contends the trial court abused its discretion and abridged his rights to a fair trial and counsel by denying the motion for a continuance by his standby counsel. His contention is unsupported by the record.

On July 13, 2011, the information was filed charging defendant with Ms. Harvey's murder.[2] On August 4, 2010, the trial court (Hon. James Bianco) granted defendant's request to represent himself. On October 4, 2011, the court (Hon. Dennis J. Landin) advised defendant that if he still wanted to represent himself he had to fill out a *Faretta* waiver of counsel form.[3] After defendant stated he wanted to think about representing himself, the court deferred its ruling until after he had an opportunity to speak to the

---

[2]      The jury found not true the rape special circumstance allegation (§ 190.2, subd. (a)(17)).

[3]      *Faretta v. California* (1975) 422 U.S. 806 (*Faretta*).

3

public defender, his previously appointed counsel. On October 6, 2011, defendant advised the court that he did want to represent himself, confirmed his signature on the *Faretta* form, and indicated his understanding of the court's admonishments regarding the dangers of self-representation. The court ruled defendant could continue to represent himself.

On January 10, 2012, when the court inquired whether he still wanted to represent himself, defendant responded he would like appointment of an advisory counsel so long as he did not have to give up his in propria persona status. The court appointed Alan Kessler, who had been defendant's standby counsel, as his advisory counsel. Later, the court vacated its order and reinstated Mr. Kessler as his standby counsel. "[A]s stand-by counsel, [Mr. Kessler] will be expected to be present at the trial, and in the event that your pro per status is terminated, the trial judge may ask him to take over your case at whatever state it is in." "[W]ith this understanding," Mr. Kessler agreed to continue as standby counsel.

On February 23, 2012, the jury was sworn.

On February 24, 2012, the trial court denied defendant's renewed motion for a continuance.

On February 27, 2012, just before opening statements, defendant requested his in propria persona status be revoked. The prosecutor objected that jeopardy had attached and his witnesses were ready to testify, including one flown in from Dallas. The court asked whether Mr. Kessler could "resume" defendant's case. Mr. Kessler responded he had "kept up with the file and reviewed it" and attended most of the proceedings; however, he requested a mistrial and a two-month continuance for discovery. The prosecutor objected such delay "would pretty much defeat the entire purpose of having stand-by counsel" and serve to give defendant the continuance already denied. Mr. Kessler asked the court to excuse the jury until the afternoon, and the court granted that request. After the lunch break but outside the presence of the jury, Mr. Kessler advised the court he had talked with defendant and defendant confirmed he wanted Mr. Kessler to be his counsel and Mr. Kessler was prepared to proceed. Mr. Kessler then

4

asked for an opportunity to present additional evidence the next morning outside the presence of the jury relating to a motion to suppress evidence that the court had previously heard and denied, and the court granted that request as well. Mr. Kessler never said he was not prepared to represent defendant at trial.

The trial court denied the motions for a mistrial and a continuance. The court reminded defendant that in signing the *Faretta* waiver, he understood "if at some point an appointed attorney does take over [his] case, that attorney may be at a disadvantage and that such a disadvantage will not be considered an issue on appeal." Moreover, the court had explained to him on more than one occasion that if counsel took over the case in the middle of trial, "it would likely be to his disadvantage."

" 'Standby counsel' is an attorney appointed for the benefit of the court whose responsibility is to step in and represent the defendant if that should become necessary because, for example, the defendant's in propria persona status is revoked.' [Citations.]"[4] (*People v. Blair* (2005) 36 Cal.4th 686, 725.)

"The determination of whether a continuance should be granted rests within the sound discretion of the trial court, although that discretion may not be exercised so as to deprive the defendant or his attorney of a reasonable opportunity to prepare." (*People v. Sakarias* (2000) 22 Cal.4th 596, 646.) " 'Discretion is abused only when the court exceeds the bounds of reason, all circumstances considered.' " (*People v. Froehlig* (1991) 1 Cal.App.4th 260, 265.) " 'In deciding whether the denial of a continuance was so arbitrary as to violate due process, the reviewing court looks to the circumstances of each case, " 'particularly in the reasons presented to the trial judge at the time the request [was] denied.' " [Citations.]' [Citations.]" (*Ibid.*)

Absent " 'a showing of an abuse of discretion and prejudice to the defendant, a denial of a motion for a continuance does not require reversal of a conviction. [Citation.]' [Citations.] Defendant bears the burden of establishing . . . denial of a

---

**4**     " 'Advisory counsel,' by contrast, is appointed to assist the self-represented defendant if and when the defendant requests help." (*People v. Blair*, *supra*, 36 Cal.4th at p. 725.)

continuance request was an abuse of discretion." (*People v. Panah* (2005) 35 Cal.4th 395, 423.)

The trial court's denial of the motion by standby counsel for a two-month continuance fell well within the court's wide discretion. Mr. Kessler acknowledged he had "kept up with the file and reviewed it" and attended most of the proceedings. The jury had been selected, and witnesses were ready. Defendant has not demonstrated he was denied a fair trial.

### 2.    Striking of $200 Parole Revocation Mandated

Defendant contends, and respondent concedes, the trial court erred in imposing a parole revocation fine under section 1202.45 in violation of the ban against ex post facto laws in the federal and state Constitutions (U.S. Const., art. 1, § 10; Cal. Const., art. 1, § 9.) Defendant committed the murder in 1990. Section 1202.45 was not enacted until 1995 and was effective as of August 3, 1995. (Stats. 1995, ch. 313, § 6.) In *People v. Callejas* (2000) 85 Cal.App.4th 667, the court held that imposition of a parole revocation fine pursuant to section 1202.45 where the underlying offense was committed before enactment of section 1202.45 violates the ex post facto clause. (*Callejas,* at pp. 669, 678.) The judgment therefore must be modified by striking the $200 parole revocation fine imposed under section 1202.45.

### 3.    Award of 15 Percent of Accrued Conduct Credit Warranted

Section 2933.2, subdivision (a), which precludes a convicted murderer from accruing credit as provided for in section 2933 (conduct credit), only applies to "murder that is committed on or after the date on which this section becomes operative." (§ 2933.2, subd. (d).) The statute became effective on June 3, 1998, some eight years after the murder was committed. (*People v. Hutchins* (2001) 90 Cal.App.4th 1308, 1317; *People v. Ly* (2001) 89 Cal.App.4th 44, 47.) The trial court therefore erred in failing to calculate defendant's presentence credits pursuant to the law in effect before the effective date of section 2933.2.

6

Defendant contends he is entitled to 392 conduct credit days in addition to the 1,178 actual custody days the court awarded him.  Respondent contends the correct conduct credit amount is 588.  Respondent's calculation is correct.

Before June 3, 1998, pursuant to section 4019, a criminal defendant was entitled to conduct credit based on this formula:  After calculating the number of actual custody days, the trial court would divide this number by four, discarding and not "rounding up" any fractional amount, and then multiply this product by two.  (*In re Marquez* (2003) 30 Cal.4th 14, 25-26.)  This formula produces 588 conduct credit days in this case.

In sum, defendant is entitled to a total award of presentence credits in the amount of 1,766 days, consisting of 1,178 actual custody days and 588 conduct credit days.

## DISPOSITION

The judgment is modified by striking the $200 parole revocation fee and awarding a total of 1,766 days of presentence credit, consisting of 1,178 actual custody days and 588 conduct credit days.  As so modified, the judgment is affirmed.  The superior court is directed to prepare an amended abstract of judgment accordingly, and transmit same forthwith to the Department of Corrections and Rehabilitation.


GRIMES, J.


We concur:

BIGELOW, P. J.



RUBIN, J.



7